8 A.3d 885

MALT BEVERAGES DISTRIBUTORS ASSOCIATION
and Tanczos Beverages, Inc., Appellants

v.

PENNSYLVANIA LIQUOR CONTROL BOARD, Appellee

Wegmans Food Markets, Inc., Intervenor.

Malt Beverages Distributors Association, Appellant

v.

Pennsylvania Liquor Control Board, Appellee

Wegmans Food Markets, Inc., Intervenor.

Malt Beverages Distributors Association, Appellant

v.

Pennsylvania Liquor Control Board, Appellee

Wegmans Food Markets, Inc., Intervenor.

Malt Beverage Distributors Association
and Beer Super, Inc., Appellants

v.

Pennsylvania Liquor Control Board, Appellee

Wegmans Food Markets, Inc., Intervenor.

Malt Beverages Distributors Association
and K.E. Pletcher, Inc., Appellants

v.

Pennsylvania Liquor Control Board, Appellee

Wegmans Food Markets, Inc., Intervenor.

Supreme Court of Pennsylvania.

Argued April 14, 2010.

Decided Dec. 3, 2010.

Robert B. Hoffman, Eckert Seamans Cherin & Mellot, LLC, Harrisburg, for Malt Beverage Distributors Association of PA and Tanczos Beverages, Inc.

Faith Smith Diehl, PA Liquor Control Board, Rodrigo Jose Diaz, Harrisburg, for Pennsylvania Liquor Control Board.

Robert J. O'Hara, III, Stanley Wolowski, Pittsburgh, Mark E. Kozar, Flaherty & O'Hara, P.C., Robert C. Heim, Dechert LLP, Philadelphia, Thomas Benton Henry, Flaherty & O'Hara, P.C., John Shantanu Ghose, Dechert LLP, Philadelphia, for Wegmans Food Markets, Inc.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice BAER.

We granted allocatur in these consolidated appeals to determine whether the Pennsylvania Liquor Control Board ("PLCB") erred by authorizing five restaurants, each of which is interconnected to a supermarket, to sell beer for consumption on the premises, as well as in limited quantities for takeout purposes. The parties agree that each premises constitutes a "restaurant" as defined by Section 102 of the

Liquor Code, 47 P.S. § 1–102.[1] Thus, our inquiry focuses on whether the PLCB acted within its discretion when it approved the interior connection between the licensed restaurant and the unlicensed supermarket, and, assuming such approval was properly given, whether a restaurant situate entirely within a supermarket should ever be eligible to hold a liquor license. The Commonwealth Court affirmed the grant of the restaurant liquor licenses, holding that the PLCB acted within its discretion in approving the interior connection and that these restaurants, like any other that comply with the applicable provisions of the Liquor Code and the PLCB's regulations, were proper licensees. For the reasons set forth herein, we affirm the Commonwealth Court's decision.

The record establishes that in 2007, Wegmans Food Markets, Inc. ("Wegmans") applied to the PLCB for the transfer of five restaurant liquor licenses from unrelated facilities to its preexisting Market Cafe restaurants located within each of its upscale grocery stores in Williamsport, Wilkes–Barre, State College, Bethlehem, and Easton, Pennsylvania. Under Section 401(a) of the Liquor Code, the PLCB is authorized, *inter alia*, to issue a retail liquor license to any premises operated as a restaurant, subject to the remaining provisions of the Liquor Code and the PLCB's regulations. 47 P.S. § 4–401(a).[2] *See also* 47 P.S. § 4–404 (setting forth the consider-

1. The Liquor Code defines a "restaurant" as follows:
   "RESTAURANT" shall mean a reputable place operated by responsible persons of good reputation and habitually and principally used for the purpose of providing food for the public, the place to have an area within a building of not less than four hundred square feet, equipped with tables and chairs, including bar seats, accommodating at least thirty persons at one time. The board shall, by regulation, set forth what constitutes tables and chairs sufficient to accommodate thirty persons at one time.
   47 P.S. § 1–102.

2. Section 401(a) of the Liquor Code expressly authorizes the PLCB to issue retail liquor licenses to hotels, restaurants, and clubs, subject to the provisions of the Code and the regulations promulgated pursuant thereto. Such liquor licenses entitle the hotel, restaurant, or club to sell liquor and malt beverages on the premises, and to sell malt beverages for consumption off the premises, limited to quantities of not more than 192 ounces (commonly sold as twelve 16–ounce bottles, packaged as two six-packs). 47 P.S. § 4–401(a). The Code defines

ations for issuing or transferring a hotel, restaurant, or club liquor license).

The Malt Beverage Distributors Association ("MBDA"), a trade association for malt beverage distributors in Pennsylvania, and various MBDA member distributors [3] filed a joint motion to intervene in Wegmans' licensure proceedings. MBDA contended, *inter alia*, that the interconnections between the proposed licensed restaurant premises and the remainder of the Wegmans' supermarket violated PLCB Regulations 3.52–54, 40 Pa.Code §§ 3.52–54, as set forth *infra*, and that approval of such connections would effectively expand beer sale venues to include supermarkets, thereby infringing on beer distributors' niche in the market share.

MBDA relied on PLCB Regulation 3.52, entitled "[c]onnection with other business," which provides that licensees "may not conduct another business," or "permit other persons to operate another business on licensed premises." *Id.* at § 3.52(a), (c). The regulation further states that "[l]icensed premises may not have an inside passage or communication to or with any business conducted by the licensee or other persons *except as approved by the Board.*" *Id.* at § 3.52(b) (emphasis added). Regulation 3.54 addresses such "interior connection," and states that "[w]here the Board has approved the operation of another business which has an inside passage or communication to or with the licensed premises, the extent of the licensed area shall be clearly indicated by a permanent partition at least 4 feet in height." *Id.* at § 3.54. Additionally, Regulation 3.53 provides that where the PLCB has approved an interior connection between a licensed premises and another business, "storage and sales of liquor and malt or

---

"malt or brewed beverages" as including beer, ale, or similarly fermented malt beverages containing one-half of one per centum or more of alcohol by volume. *Id.* at § 1–102.

3. The individual beer distributors who remain in this action, *i.e.*, Tanczos Beverages, Inc., Beer Super, Inc., and K.E. Pletcher, Inc., have filed a joint appellate brief with MBDA, and are the appellants herein. For ease of discussion, use of the name "MBDA" in this opinion will hereafter encompass both the trade association itself and its individual member distributors who are named in this appeal.

brewed beverages shall be confined strictly to the premises covered by the license." *Id.* at § 3.53.

As a result of MBDA's objections, a PLCB hearing examiner conducted individual hearings relating to each license application. The evidence presented at each hearing applied generally to all Wegmans' restaurants, with the exception of certain site-specific information. Relevant to these appeals, evidence was presented regarding the propriety of the interior connections, and the propriety of "other business" conducted on the licensed premises.[4] Argument was also presented as to whether the grant of these licenses served as *de facto* authorization for supermarkets, as opposed to restaurants, to sell beer. Finally, the parties contested the relevance of the Commonwealth Court's decision in *Malt Beverage Distributors Ass'n v. Pennsylvania Liquor Control Board* (*"Sheetz"*), 918 A.2d 171 (Pa.Cmwlth.2007), where that court rejected the PLCB's issuance of a retail dispenser's eating place liquor license to a Sheetz convenience store that sought to sell beer solely for off-premises consumption, after the court interpreted the relevant provision of the Liquor Code as requiring the sale of beer for consumption on the premises as a condition precedent for takeout sales.[5]

We begin by reviewing the evidence presented, as it applies generally to all five cases on appeal.[6] Initially, Wegmans presented testimony establishing that their existing restaurants, for which they sought the liquor licenses, far exceeded

4. Evidence was also presented on the issue of whether MBDA should be permitted to intervene in the licensure proceedings. The PLCB ultimately determined that MBDA and its member distributors that remain in this appeal were entitled to intervenor status because they would be directly aggrieved by the approval of Wegmans' license application. The Commonwealth Court affirmed that determination, and such ruling is not at issue in this appeal.

5. This Court had not yet ruled in Sheetz at the time of the PLCB hearings. Our subsequent decision in that matter, *see* 601 Pa. 449, 974 A.2d 1144 (2009), is discussed in detail, *infra*.

6. As Wegmans' stores operate under common management, and share the same business plan and physical layout, the PLCB viewed the evidence presented at the separate hearings as constituting one record applicable to all five applications for licensure. We shall do the same.

the requirements of Section 102 of the Liquor Code, which mandates a restaurant "have an area within a building of not less than four hundred square feet, equipped with tables and chairs, including bar seats, accommodating at least thirty persons at one time." 47 P.S. § 1–102. Wegmans established that its restaurants range from 6,000 to 9,000 square feet, and typically seat 150–200 patrons, with the State College restaurant having accommodations for as many as 276 patrons. The restaurants serve a wide assortment of soups, salads, and entree items in a cafeteria-style setting. Wegmans further demonstrated that the restaurant area in each facility would be clearly marked by four-foot walls. Entry to the restaurants would be obtained *via* passages in the divider walls, and also from a separate exterior doorway. Wegmans asserted that the beer will be stored in coolers placed within the restaurant demarcated by the four-foot divider walls, and that beer purchases will be restricted to dedicated cash registers located in these areas. The licensed restaurants will have restricted hours, as compared to the rest of the store.

Wegmans also presented evidence that it planned to sell the beer for consumption on the premises as an accompaniment to the food served in the restaurant, and to sell beer for takeout in legally permissible quantities of a maximum of two six-packs per sale. Wegmans established that none of the restaurants were located within 200 feet of any other licensees or within 300 feet of any restrictive institutions.[7] Additionally, evidence was presented that the PLCB has previously issued restaurant liquor licenses to restaurants that were interconnected to department stores, such as Boscov's and John Wanamaker's, and issued an eating place malt beverage license to a Wawa convenience store that satisfied the statutory requisites.

MBDA did not contest the evidence presented by Wegmans regarding the physical characteristics of the restaurants and their connections to the grocery stores. However, MBDA did assert that beer distributors would be economically impacted

7. Restrictive institutions include churches, hospitals, charitable institutions, schools, and public playgrounds. 47 P.S. § 4–404.

if the PLCB granted Wegmans' restaurant liquor licenses, and the parties presented conflicting evidence on this issue. MBDA presented testimony of its chief counsel and of owners of neighboring beer distributors, which established their concern that the grant of licenses will directly result in unfair competition in the beer sale market, causing a number of Pennsylvania beer distributors to go out of business. They asserted that there is a difference between Wegmans and a typical restaurant licensee because customers who patronize Wegmans are there to buy grocery items, which beer distributors cannot sell. MBDA further presented testimony suggesting that Wegmans would attract customers who desired to purchase beer solely for takeout purposes, thus infringing on their market share of beer sales.

To the contrary, Wegmans presented the testimony of an economist who opined that beer distributors would not suffer a negative economic impact if Wegmans began selling beer in its restaurants. With Wegmans being limited to selling two six-packs per takeout purchase, the economist asserted that such sales would not impact distributors' sale of larger quantities, as there are different customer bases for the sale of beer in six-packs and sales by the case. The economist further testified that distributors may actually benefit from Wegmans' licensure because Wegmans, as a "destination retailer," attracts a large number of customers, which is an advantage to nearby businesses based on the economic benefit of "clustering" retailers.

At the conclusion of the proceedings, the hearing examiner recommended that the PLCB approve all of the license applications. Consistent with the hearing examiner's recommendation, the PLCB subsequently approved Wegmans' restaurant liquor license applications, and issued extensive opinions in support thereof. Germane to the issues presented, the PLCB carefully considered the propriety, under Regulation 3.52(b), of the "interior connection" between the restaurant and supermarket. The PLCB found that its determination in this regard is entirely discretionary, and that it has historically exercised its discretion by permitting interior connections

between restaurants or eating place licensees and unlicensed commercial establishments. PLCB Opinion, *In re: Applicant Food Markets, Inc.,* Case No. 07–9158 (regarding license application for Bethlehem store), at 115, 128.

Once the discretionary decision to approve an interior connection had been made, the PLCB noted that the requisites of Regulations 3.53 and 3.54 must also be satisfied; these regulations restrict beer storage and sales to licensed areas delineated by a permanent partition of at least four feet. The PLCB ruled that the evidence presented by Wegmans satisfied these regulations, as the proposed licensed restaurant will be clearly marked by four-foot walls with interior and exterior passageways, and all beer storage and sales will be limited to the restaurant. *Id.* at 117. Under these circumstances, the PLCB found no basis to prohibit connection between Wegmans' licensed restaurant and its unlicensed grocery store. *Id.*

The PLCB likewise concluded that Wegmans satisfied the requirements to operate "another business" on the licensed premises (*i.e.,* the storage and preparation of food items for the unlicensed grocery store) pursuant to Regulation 3.52(c), which, as noted, provides that a licensee may not conduct another business on the licensed premises absent PLCB approval.[8] Finding such determination also to be of a discretionary nature, the PLCB found that storage and preparation of food items on the licensed premises for sale in the grocery store "in no way threatens the goal of the [PLCB] to protect the public welfare, health, peace, and morals of the citizens of this Commonwealth." *Id.* at 118. The PLCB went on to conclude that "[t]here was no evidence that the storage and preparation of food items for the unlicensed grocery store and/or items for sale in the grocery store would in some way compromise the integrity of [Wegmans'] control over the

8. In reality, the restaurant, which will be licensed to sell beer, is located within the grocery store premises. Notwithstanding, for purposes of analyzing Regulation 3.52(c), the PLCB framed its discussion as if the grocery store was within the restaurant. For ease of discussion, we will adhere to this framework as it is not dispositive of the issues at hand.

licensed premises or over the sale and or storage of alcoholic beverages." *Id.*

Additionally, the PLCB made a specific finding that Wegmans decided consciously in the early nineties to offer prepared foods for its target customers who lacked the time to cook meals, and that "it certainly does not appear that [Wegmans] built its restaurants in a veiled attempt to have the opportunity to sell takeout beer." *Id.* at 134. The Board rejected as speculative and unsupported by the record MBDA's contention that Wegmans is technically complying with the PLCB requirements, but intends, for all practical purposes, to act as a distributor. *Id.* at 139. Finally, the PLCB discussed the application of the Commonwealth Court's decision in *Sheetz,* 918 A.2d 171 (Pa.Cmwlth.2007), and concluded that such decision did not preclude the approval of an interior connection or passageway, but rather interpreted the statutory definition of "retail dispenser," which is not at issue in the instant cases.

MBDA appealed to the Commonwealth Court, contending that the real seller of beer was Wegmans' supermarket, and that the notion that the restaurant is the retailer is merely legal fiction. It further argued that the interior connection between the grocery store and restaurant did not sufficiently separate the two businesses as the licensed space was fundamentally an integral part of the supermarket. MBDA further argued that permitting Wegmans to sell beer for takeout in its restaurant, under the same roof as its supermarket, contravenes the PLCB's goal of regulating and restricting the sale of alcohol, and, instead promotes the sale of beer. Finally, MBDA argued that the Commonwealth Court's decision in *Sheetz, supra,* supported its position herein.

The Commonwealth Court affirmed the grant of Wegmans' restaurant liquor licenses in five separate opinions; making the opinion regarding the Bethlehem store location the lead case, *Malt Beverages Distribution Association and Tanczos Beverages Inc. v. Pennsylvania Liquor Control Board,* 965 A.2d 1254 (Pa.Cmwlth.2009), and employing the rationale set forth therein to the remaining cases. As a threshold matter,

the court affirmed the grant of intervenor status to MBDA and the individual beer distributors participating in the appeal.

Regarding the merits of the grant of licensure, the court reiterated that it was undisputed that Wegmans satisfied the statutory definition of "restaurant" as set forth in Section 102 of the Liquor Code.[9] The court proceeded to address whether the PLCB committed an error of law or abused its discretion by approving the sale of beer in a restaurant that was subsumed within a grocery store. It concluded that the present action involved the sale of malt liquor in a restaurant, as authorized by the legislature, and the fact that the restaurant was within the grocery store did not disqualify it from receipt of a restaurant license.

The court then specifically addressed the interior connection between the restaurant-licensed premises and the grocery store. It concluded that the PLCB did not abuse its discretion through approval of this arrangement, as Wegmans complied with Regulations 3.52–3.54 by demarcating the proposed restaurant by four-foot walls and restricting beer storage and sales exclusively to that area. Finally, the Commonwealth Court rejected MBDA's contention that its previous decision in *Sheetz* compelled a contrary result, finding that *Sheetz* focused on the proper statutory construction of a "retail dispenser," and did not involve the issue of whether the PLCB could approve an interior connection.

This Court subsequently granted allowance of appeal in all five licensure cases to address the following issue:

Did the Pennsylvania Liquor Control Board improperly apply its "interior connection" and "other business" rules so as to circumvent the fundamental Liquor Code rules establishing the venues at which beer may be sold in Pennsylvania and thereby authorize a supermarket that has a "restaurant" area within it to sell beer, primarily in six and twelve-packs and primarily for take-out consumption, to its supermarket customers?

9. The court further recognized that at no time during these proceedings did MBDA challenge the validity or constitutionality of the applicable PLCB regulations.

The various appeals have been consolidated, and are now ready for disposition. An appellate court's standard of review over an appeal from an agency requires it to affirm the administrative adjudication unless it finds that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed, or that any necessary finding of fact is not supported by substantial evidence of record. *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 603 Pa. 452, 985 A.2d 678, 683 (2009); 2 Pa.C.S. § 704. The "error of law" component of the applicable standard of review may include an issue of statutory construction, over which our review is plenary, *Malt Beverages*, 974 A.2d at 1149 n. 10. Moreover, we can consider whether the agency's determination represents an abuse of discretion. *Pa. Game Comm'n v. State Civ. Serv. Comm'n*, 561 Pa. 19, 747 A.2d 887, 891 (2000). *See also Slawek v. State Board of Medical Education & Licensure*, 526 Pa. 316, 586 A.2d 362, 365 (1991) (citing *Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 109 A.2d 331, 334 (1954)) (holding that "courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution").

As it advocated below, MBDA's argument on appeal is premised upon one basic notion: that this case involves the sale of malt liquor by a grocery store, which is impermissible in Pennsylvania. In support of this core contention, MBDA asserts that both the licensed restaurant and supermarket are "under the Wegmans' roof," and that Wegmans' own advertising suggests that selling beer in its restaurant constitutes "shopping at Wegmans." Appellants' Brief at 19, 20. MBDA urges this Court to "place reality ahead of legal form," and recognize that the economic reality of the situation is that the purchase of beer from a Wegmans' restaurant is, in fact, a purchase of beer from Wegmans' supermarket. *Id.*

MBDA cites cases arising in other areas of the law where this Court has declined to allow form to trump substance in an effort to circumvent controlling legislation. *See e.g., Borough of Youngwood v. Pennsylvania Prevailing Wage Appeals Board*, 596 Pa. 603, 947 A.2d 724 (2008) (rejecting the Borough's characterization of a road improvement project as "maintenance" so as to avoid the impact of the Prevailing Wage Act because such interpretation was incompatible with the clear and significant legislative intent of the controlling legislation). MBDA urges this Court to find that the PLCB's countenancing of beer sales by a grocery store, regardless of whether the sales emanate from a restaurant within the grocery store, constitutes both an error of law and an abuse of discretion.

In response, the PLCB and Wegmans, as Intervenor (collectively, "Appellees"),[10] contend that the PLCB did not err when it granted Wegmans' applications for transfer of the liquor licenses to its restaurants, regardless of whether they are located within its grocery stores. Appellees submit that MBDA points to no statute or regulation that prohibits a restaurant liquor licensee from having an interior connection with a supermarket, as none exists. The Liquor Code does not even reference a supermarket or grocery store, Appellees assert, and the PLCB is expressly authorized to grant interior connections by PLCB Regulation 3.52, which has the force of statutory law. *See* 47 P.S. § 2–207(i) (providing that regulations adopted by the PLCB "shall have the same force as if they formed a part of this act [the Liquor Code].").

According to Appellees, MBDA seeks to have this Court "step into the shoes of the Legislature" and "hold that a restaurant cannot be located adjacent to [or within] a grocery store, even though there is no such restriction or prohibition in the Liquor Code." Wegmans' Brief at 16. They conclude that absent a legislative directive, such holding would be improper. *See Chinese Gourmet Inc. v. Pennsylvania Liquor*

10. Although Wegmans and the PLCB have filed separate appellate briefs, for purposes of brevity we discuss their arguments together, as they both advocate affirmance of the Commonwealth Court's decision.

*Control Board,* 533 Pa. 129, 620 A.2d 1096, 1098 (1993) (holding that there must be statutory authority to deny an application for transfer of a liquor license, and, without such authority, "neither this court nor the board is authorized to create reasons for denial of transfer which the legislature has chosen to omit."). Appellees conclude that "MBDA is not seeking to uphold the key tenets of the Liquor Code, but rather to protect the perceived economic interests of its members." Wegmans' Brief at 31.

Appellees also assert that the record establishes that Wegmans has satisfied all applicable regulatory requirements, particularly Sections 3.53–54 of the PLCB's regulations. In this regard, Appellees note there is no dispute that the licensed premises were bona fide restaurants in existence long before Wegmans filed applications for liquor licenses, and are not an artifice for selling takeout beer. Moreover, these restaurants will be separated from the grocery stores by four foot walls, and all storage and sales of malt beverages will occur solely within them, and not in the discrete grocery stores. Further, Appellees assert that the grant of license transfers would have no adverse affect on public welfare, health, or morals, and that the PLCB has approved similar interior connections in the past.

Finally, Appellees contend that MBDA's reliance upon this Court's decision in *Sheetz* is misplaced. They contend that the issue before the Court in *Sheetz* was whether the PLCB committed an error of law by holding that a convenience store satisfied the statutory definition of "retail dispenser" when it prohibited consumption of beer on the premises, while the statute required the same. The instant case is clearly distinguishable, Appellees contend, because the relevant statutory definition of "restaurant" has been satisfied, and thus, the PLCB committed no error in granting Wegmans' applications. They point out that *Sheetz* did not involve the propriety of the interior connection between the licensed and unlicensed businesses conducted by the applicant in a single building. Thus, Appellees maintain that such decision should not be viewed as controlling here.

■ Upon careful review, we agree with Appellees that the PLCB did not err as a matter of law or fact when it authorized the sale of beer by Wegmans' restaurants. Although not in the chronology presented by MBDA, we first consider whether the PLCB abused its discretion when it approved the interior connection between the restaurant and the grocery store. The parties agree that PLCB regulations contemplate the possibility of the approval of such interior connection between a licensed entity and another business if Regulation 3.52, entitled, "Connection with other business," is satisfied. This regulation provides:

(a) A licensee may not permit other persons to operate another business on the licensed premises.

(b) Licensed premises may not have an inside passage or communication to or with any business conducted by the licensee or other persons except as approved by the Board.

(c) A licensee may not conduct another business on the licensed premises without Board approval.

40 Pa.Code § 3.52. Thus, Regulation 3.52 provides that licensees are permitted to operate another business (the grocery store) on the licensed premises (the restaurant), if the PLCB approves through proper exercise of its discretion. This regulation is facially satisfied as Wegmans is operating both the supermarket and restaurant, and the PLCB approved the interior connection between the two businesses. Thus, the only issue before us regarding approval of the interior connection is whether the PLCB abused its discretion when it decided in Wegmans' favor. Given that the restaurants predate the applications for the liquor license, are vastly larger and more sophisticated than the minimum statutory requirements for restaurants, and easily satisfy every other applicable statutory and regulatory criterion, we are at a loss to discern how the PLCB abused its discretion.[11]

11. This holding does not address MBDA's over-arching question of whether the PLCB abused its discretion or committed an error of law when it approved the grant of these liquor licenses to Wegmans' restaurants because they are subsumed within the grocery store. We discuss that contention separately, *infra*.

PLCB Regulations further provide that where the Board has approved an interior connection between a licensed premises and another business conducted by the licensee "the extent of the licensed area shall be clearly indicated by a permanent partition at least 4 feet in height," *id.* at § 3.54; and "storage and sales of liquor and malt or brewed beverages shall be confined strictly to the premises covered by the license." *Id.* at § 3.53. These regulatory provisions have also been satisfied. The PLCB found, and the record supports the finding that, in accordance with § 3.54, Wegmans has made a physical distinction between the proposed licensed area and the rest of the store by way of a four-foot dividing wall with interior and exterior passageways. The PLCB further found, and, again, the record supports the finding that, in accordance with § 3.53, beer is being stored and sold exclusively on the licensed premises.[12]

We turn next to MBDA's argument that our decision in *Sheetz*, 974 A.2d 1144 (Pa.2009), compels a contrary result. As alluded to *supra*, the issue in *Sheetz* was whether the PLCB erred by finding that a convenience store with an area for dining qualified as a "retail dispenser" under Section 102 of the Liquor Code[13] when it proposed to sell beer exclusively for takeout and prohibited consumption of beer on the premises. The applicant in *Sheetz* contended that the Liquor Code did not require it to sell beer for consumption on the premises, but merely afforded retail licensees the right to do so. *Sheetz* did not involve whether the PLCB abused its discretion by granting an interior connection between the convenience store

12. Further, the record demonstrates Wegmans' efforts to comply with the remaining Liquor Code provisions regarding consumption of beer on the premises; hours of operation of the restaurant, which differ from the supermarket; and the maximum statutory quantities available per takeout sale, *i.e.* the equivalent of two six-packs of beer.

13. This section defines "retail dispenser" as:

... any person licensed to engage in the retail sale of malt or brewed beverages for consumption on the premises of such licensee, with the privilege of selling malt or brewed beverages in quantities not in excess of one hundred ninety-two fluid ounces in a single sale to one person, to be carried from the premises by the purchaser thereof. 47 P.S. § 1–102.

and the purported "eating place." [14] In fact, we expressly acknowledged that the propriety of the conditions imposed by the PLCB, which required a permanent partition between the convenience store and the eating place, was not at issue; rather the dispositive fact was that the applicant prohibited on-site consumption of beer and intended to sell beer solely for carry-out purposes. *Id.* at 1147, n. 4.

After finding the statutory definition of "retail dispenser" to be ambiguous, we were guided by the canons of statutory construction, and ultimately held that a retail dispenser must sell beer for consumption on the premises for it to be authorized to sell beer for takeout. *Id.* at 1153. Because the applicant prohibited consumption of beer on the premises, we held that it did not satisfy the statutory definition of retail dispenser, and, therefore, the PLCB committed an error of law by approving the transfer of the liquor license. *Id.*

In doing so, this Court discussed the statutory beer distribution system whereby each type of licensee occupied its own "niche" in the beer market. We concluded that interpreting the ambiguous statutory definition of "retail dispenser" as permitting only takeout sales would infringe upon the beer distributors' market niche, thereby "expanding the character of retail dispenser beer sale outlets to encompass commercial entities, unlike hotels, restaurants, clubs, and eating places, which do not currently engage in the sale of alcohol." *Id.* at 1153–54. We further found that such a "momentous transformation" of the beer distribution system should be accomplished by the Legislature, rather than the Court. *Id.* at 1154. MBDA argues that this case will result in an even more momentous transformation of the beer distribution system.

We acknowledge that this decision may potentially open the door for large retailers to secure liquor licenses for legitimate restaurants located therein if they meet all statutory and regulatory criteria. This case is distinguishable, however, from *Sheetz*, where the applicant attempted to exploit a statutory ambiguity to upset the long-established paradigm for the

14. *Sheetz* involved the transfer of an "eating place" liquor license, and not a restaurant liquor license, as is the case here.

sale of beer in Pennsylvania. Here, in contrast, Wegmans has scrupulously satisfied every statutory and regulatory requirement. Thus, if the General Assembly views our interpretation as a "momentous transformation," it has the prerogative to enact responsive legislation.

Finally, as noted, we consider MBDA's overarching argument that what is actually occurring here is the sale of beer by a grocery store, when, as a matter of law, the Liquor Code prohibits the sale of beer by grocery stores. Of course, this argument requires us to ignore that Wegmans, as we have already concluded, is operating legitimate, fully-functioning restaurants within their grocery stores. This we cannot do. Refusing to acknowledge the validity of these restaurants would violate, rather than vindicate, legislative intent. The legislature has stated clearly that restaurants are entitled to obtain liquor licenses if they satisfy certain criteria, and those criteria are met here. Moreover, we do not view this decision as effectuating a "sea change" in the beer distribution system. Without addressing specific factors, *e.g.*, the type of liquor licenses, or whether they were contested, we observe that licenses have been previously issued to restaurants in shopping malls and department stores, such as Boscov's, and John Wanamaker's. While, as stated above, this may foreshadow an expansion of the practice of large businesses opening restaurants within their facilities and seeking liquor licenses for them, given that the present state of the law permits this, it is for the legislature, not this Court, to determine whether to curtail such practice.

Accordingly, we affirm the orders of the Commonwealth Court, which affirmed the PLCB's grant of Wegmans' applications for transfer of restaurant liquor licenses.

Chief Justice CASTILLE, Justices SAYLOR and EAKIN, TODD, McCAFFERY and ORIE MELVIN join the opinion.