IN THE COMMONWEALTH COURT OF PENNSYLVANIA

P&R Beverage, Inc., : 
              Petitioner : 
                 : 
       v. : No. 1395 C.D. 2018
                 : Argued: June 3, 2019
Pennsylvania Liquor Control Board, : 
              Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT               FILED: August 23, 2019

P&R Beverage, Inc., (P&R) petitions for review of an adjudication of the Pennsylvania Liquor Control Board (Board) that granted the application of Giant Food Stores, LLC (Giant) for an intermunicipal double transfer[1] of Restaurant Liquor License No. R-13859. On appeal, P&R argues that the Board erred in refusing to grant P&R standing as a protestant and abused its discretion in granting Giant's application. For the reasons that follow, we affirm the Board.

## Background

In February 2018, Giant filed an application under the Liquor Code[2] for the intermunicipal double transfer of Restaurant Liquor License No. R-13859 from B.J.'s Solid Gold, Inc., in Whitemarsh Township, Montgomery County, to its grocery store located in a strip mall at 1540 Cowpath Road, Hatfield Township,

---

[1] A "double transfer" is a term used by the Board to indicate a transfer in both ownership and location.

[2] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101 - 10-1001.

Montgomery County. Giant intends to open a "beer garden" comprising approximately 3,190 square feet within its 55,533-square-foot grocery store.[3] P&R is a beer distributor located next door to Giant. P&R filed a protest and a petition to intervene in Giant's application.[4] The Board informed P&R it would hold a hearing to take evidence regarding several of P&R's objections:

> 1. The Board shall take evidence to determine if it should permit interior connections [between the beer garden and the remainder of] the unlicensed grocery store, in accordance with Section 3.52(b) of the Board's Regulations.
>
> 2. The Board shall take evidence to determine whether it should permit the applicant to operate another business on the licensed premises (storage and preparation of food items for the unlicensed grocery store), in accordance with Section 3.52(c) of the Board's Regulations.

---

[3] A sketch of the grocery store and the proposed licensed premises can be found at pages 310a, 325a and 326a of the Reproduced Record.

[4] The Board's regulations explain who may be granted status as either a "protestant" or an "intervenor." Section 17.11(a) provides, in relevant part:

> (a) *When location is at issue.* When an application has been filed for a new retail liquor license, retail malt or brewed beverage license, importing distributor or distributor license, or the transfer of these licenses to a premises not then licensed, or for the extension of premises of these licenses, a protest may be filed with the Board by the following:
>
>> (1) A licensee whose licensed premises is located within 200 feet of the premises proposed to be licensed.

40 Pa. Code §17.11(a) (emphasis in original). Protestants may be called as witnesses to testify as to the fact and nature of the protest, if a hearing is convened. 40 Pa. Code §17.11(c). Section 17.12(a) governs intervention by a party and states:

> (a) A person who can demonstrate a direct interest in an application for a new retail liquor license, retail malt or brewed beverage license, importing distributor or distributor license, or the transfer of these licenses, whether person-to-person, place-to-place, or both, or an extension of premises of these licenses, and who can further demonstrate that a Board decision contrary to the person's direct interest will cause the person to be aggrieved may file a petition to intervene.

40 Pa. Code §17.12(a). Intervenors may testify at the hearing. *Id.* at §17.13(e).

2

3. The Board shall take evidence to determine if the applicant will allow minors to frequent its licensed premises, in violation of Section 493(14) of the Liquor Code.

4. The Board shall take evidence to determine that the approval of this application will not adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises.

5. The Board shall take evidence to determine if P&R Beverages, Inc., holder of Distributor License D-3246 (LID No. 68121) is a licensed establishment within 200 feet, which would qualify [it] as a valid protestant or, if [it] would be directly aggrieved by the granting of this application, which would qualify [it] as an intervenor in this matter.

Reproduced Record at 18a-19a (R.R. __).

## Board Hearing

The hearing examiner conducted a hearing on August 16, 2018. The Board presented the testimony of Gail McIntyre, one of its licensing analysts. McIntyre explained that she measured the distance between Giant and P&R by starting at the location of Giant's proposed beer garden that will be closest to P&R: a 15-foot by 8-foot storage room for beer and wine inventory. From there, McIntyre measured 218 feet to a dairy case on the wall between Giant and P&R. She added four feet to account for the depth of the dairy case. McIntyre concluded there was a total distance of 222 feet between Giant's proposed beer garden and P&R, not including the width of the wall between the two stores.

McIntyre explained that the unlicensed areas of the grocery store would be separated from the beer garden by structures such as bollards, shelving units and half walls. However, even with these structures, customers will have access to the entire store through the beer garden. McIntyre agreed with P&R's description of the

3

beer garden as "an island in the sea of groceries." Notes of Testimony (N.T.), 8/16/2018, at 18; R.R. 37a.

Colin Heap, Giant's Manager of Special Projects, testified. Heap explained that the store was going to be remodeled "to create a separate and distinct location within the grocery store where [it] would operate a restaurant with beer takeout, beer [for onsite] consumption and wine takeout[.]" N.T. 38; R.R. 57a. He explained that the beer garden will include an aisle, 20 cooler doors and a seasonal beer and wine display. It will be surrounded by four-foot-high bollards spaced ten feet apart. There will be seating for 30 patrons. A cash register will be equipped to handle alcoholic beverage purchases. The storage room will be secure at all times and require a key for entry. Giant's supermarket is open from 6:00 a.m. to 12:00 a.m., but the beer garden will be open 7:00 a.m. to 10:00 p.m., Monday through Saturday, and 9:00 a.m. to 10:00 p.m. on Sunday. When the beer garden is closed, chains will prevent access to the beer and wine aisle, and the coolers will be locked.

Heap testified that Giant plans to sell approximately 500 different types of beer, which it will purchase from multiple distributors, but not from P&R. Customers will be able to purchase beer in single bottles, 6-packs or 12-packs, with a maximum of 192 ounces of beer (about 12 bottles) in a single transaction. However, customers may leave the premises and return to the beer garden to start another transaction. Heap estimated that beer sales will total approximately $8,000 per week.

Heap testified that customers may consume up to a 12-ounce serving of beer in the beer garden, but only if they purchase a meal item from the prepared food stations. Heap testified that on-site beer consumption accounts for less than two

4

percent of sales at Giant's other 70 licensed stores in Pennsylvania. Giant will also sell wine for takeout and limit purchases to four standard-size bottles.

Heap asserted that Giant will not sell beer below cost because Giant is in business to make a profit and offers a beer garden as a convenience for customers. Specifically, he explained that according to research, Giant customers "want more convenience" and "want to be able to get more done in a single shopping trip." N.T. 62; R.R. 81a. He stated that Giant wants the beer garden to be "a very natural and complementary part of the shopping experience," but not "a bar or entertainment-type experience within the beer garden." N.T. 63; R.R. 82a.

Heap next testified about Giant's server policies. Every beer garden associate is trained according to the Commonwealth's Responsible Alcohol Management Program (RAMP) and Giant's own compliance policies. These policies ensure that sales are not made to minors or visibly intoxicated individuals. For example, associates must card every customer, which requires them to feel and examine the customer's identification, ask questions and then return the identification. Associates electronically scan every customer's identification to ensure authenticity. Further, a customer's date of birth must be entered into the register before a sale of alcohol can occur. Associates are required to keep a watchful eye on customers consuming beer on the premises. Heap explained that the beer garden will comply with the "Pizza Hut Exception" that allows the presence of minors without a parent, so long as alcoholic beverages are not served at the table.[5]

_____

[5] The "Pizza Hut Exception" allows minors to frequent a licensed premises without a parent or legal guardian so long as no alcoholic beverages are served at the table where the minor is seated. Further, the licensee, Giant, will have food sales that far exceed its sale of alcoholic beverages. The "Pizza Hut Exception" requires food sales to exceed alcohol sales by 50 percent or more. *See Minors on the Licensed Premises*, PENNSYLVANIA LIQUOR CONTROL BOARD, *available at* https://www.lcb.pa.gov/Legal/Documents/000814.pdf (last visited August 21, 2019).

All transactions in the beer garden will be recorded by video surveillance. Giant has opened 70 licensed restaurants in its Pennsylvania stores since 2009 and has never been cited for a Liquor Code violation.

On cross-examination, Heap explained that Giant will not encourage customers to consume alcohol onsite. Heap testified that Giant's top selling beers are Miller Lite, Bud Light and Coors Light.

P&R presented the testimony of Thomas J. Shepstone, a consultant who does economic analyses of supply and demand for liquor in specific demographic regions. Shepstone analyzed the potential impact of Giant's beer garden on P&R's business. He testified that in 2013, P&R acquired its business for $900,000, with $350,000 allocated to the purchase of its liquor license. Shepstone concluded that there is excess capacity in the relevant market area, meaning that a new entrant to the marketplace will draw upon another participant's market share. Shepstone predicted that Giant's beer garden will reduce the value of P&R's business by $500,000 to $600,000. Shepstone opined that the value of P&R's business that it purchased for $900,000 in 2013 would fall to approximately $318,000. Shepstone also testified that the decrease in value of P&R's existing liquor license could be "between $227,000 and $582,000." N.T. 146; R.R. 165a.

P&R next presented the testimony of Jerry Waters, Sr., of Jerry Waters Consulting. Waters' firm consults with clients on issues related to alcohol regulation, licensing, marketing and education. Waters previously worked for the Board for 39 years in various capacities, including as a licensing investigator, licensing analyst, Director of the Bureau of Licensing and Director of the Office of Regulatory Affairs. He opined that the grant of Giant's application will negatively affect the value of P&R's business and liquor license. Waters' conclusion was based

6

on the fact that the two businesses are adjacent to one another in the same shopping center. Waters acknowledged that he did not gather any data, perform any impact study or test his conclusion against any economic models.

Lastly, Alex Pugman, the son of P&R's owner who works for P&R, testified. He testified that P&R's most profitable items are single bottles and six-packs and that its top selling brands are Miller Lite, Bud Light, Coors Light, and Yuengling Lager. P&R's bestselling item is a 30-count pack of Miller Lite, but it is more expensive for P&R to buy and yields less profit. Pugman anticipates that P&R will compete with Giant on the most profitable items and will be buying from the same wholesalers. On cross-examination, Pugman acknowledged that when his father purchased P&R in 2013, Giant had been operating its store for several years and that his family was aware that grocery stores were beginning to receive liquor licenses. However, they believed only certain grocery stores, such as Wegmans, could be licensed.

Giant and P&R submitted post-hearing briefs. On the issue of proximity, Giant asserted that the Board's regulations require a measurement beginning at the "part of the place proposed to be licensed nearest to the" existing licensed premises. 40 Pa. Code §3.23(a)(2). In this case, McIntyre began her measurement at the storage area, which was the part of Giant's proposed licensed premises nearest to P&R. She measured a distance of 222 feet between the two licensed premises, which exceeded the 200-foot maximum distance required for protestant status. *See* 40 Pa. Code §17.11(a)(1). In the absence of any evidence to the contrary, Giant asserted that the measurement was proper and that P&R should be denied protestant status.

7

P&R asserted that Giant's application should be denied. P&R argued that it was entitled to protestant status because it was located less than 200 feet from Giant and that it was entitled to intervenor status because its business would be adversely affected by the grant of Giant's application. Lastly, P&R argued that Giant's proposed beer garden did not qualify as a "restaurant" under the Liquor Code because it will not be "habitually and principally used for the purpose of providing food for the public." Section 102 of the Liquor Code, 47 P.S. §1-102.

The Board's hearing examiner issued a recommended report that the Board deny P&R protestant status and grant it intervenor status since it will be directly aggrieved by Giant obtaining its requested liquor license. The hearing examiner recommended that the Board approve Giant's application for the intermunicipal double transfer of the restaurant liquor license.

**Board Opinion**

On September 26, 2018, the Board adopted the hearing examiner's recommended report. It approved Giant's intermunicipal double transfer application. The Board denied P&R protestant status, but granted it standing as an intervenor. P&R petitioned for this Court's review, and the Board issued an opinion in support of its order.

In that opinion, the Board first considered the connection between the beer garden and the unlicensed grocery store. It noted that Section 3.52(b) of its regulations provides, "[l]icensed premises may not have an inside passage or communication to or with any business conducted by the licensee or other persons *except as approved by the Board*." 40 Pa. Code §3.52(b) (emphasis added). The Board noted it had previously approved interior connections between licensed and unlicensed areas within grocery stores; it cited to several cases. *See* Board Opinion

8

at 32; R.R. 1142a.  The Board determined that based on the beer garden's proposed layout in relation to the unlicensed grocery store, the interior connection should be approved.

The Board next considered whether it should permit Giant to operate another business on the licensed premises, *i.e.*, the storage and preparation of food items for the unlicensed grocery store.  The Board concluded that the preparation and storage of food would not threaten the public welfare, health, peace and morals of the citizens of the Commonwealth or compromise Giant's control over the licensed premises.

The Board then considered whether minors patronizing the proposed beer garden would violate Section 493(14) of the Liquor Code.[6]  Based on the testimony of Giant's witnesses, the Board concluded that it was unlikely that Giant

---

[6] It states, in relevant part, as follows:

> The term "licensee," when used in this section, shall mean those persons licensed under the provisions of Article IV, unless the context clearly indicates otherwise.
> **It shall be unlawful—**
>
> * * *
>
> **(14) Permitting Undesirable Persons or Minors to Frequent Premises.** For any hotel, restaurant or club liquor licensee, or any retail dispenser, his servants, agents or employes, to permit persons of ill repute or prostitutes to frequent his licensed premises or any premises operated in connection therewith. Minors may only frequent licensed premises if: (a) they are accompanied by a parent; (b) they are accompanied by a legal guardian; (c) they are under proper supervision; (d) they are attending a social gathering; or (e) *the hotel, restaurant or retail dispenser licensee has gross sales of food and nonalcoholic beverages equal to fifty per centum or more of its combined gross sale of both food and alcoholic beverages.* If a minor is frequenting a hotel, restaurant or retail dispenser licensee under subsection (e), then the minor may not sit at the bar section of the premises, nor may any alcoholic beverages be served at the table or booth at which the said minor is seated unless said minor is with a parent, legal guardian or under proper supervision.

47 P.S. §4-493(14).

9

would violate the "Pizza Hut Exception." The beer garden associates will have extensive training in processing liquor sales and validating the authenticity of customer identification. The Board concluded that Giant will have sufficient safeguards and will take every precaution to operate in compliance with the Liquor Code and the Board's regulations.

Finally, the Board determined that Giant's beer garden will not adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet because the neighborhood is 100 percent commercial.

As to standing, the Board determined that P&R was entitled to intervenor status because it will be directly aggrieved by the approval of Giant's application. The Board denied P&R's request for protestant status, citing its regulation requiring a protestant to have a licensed premises within 200 feet of the proposed licensed premises. *See* 40 Pa. Code §17.11(a)(1). McIntyre, the Board's licensing analyst, measured 222 feet between P&R and Giant's proposed beer garden.

**Appeal**

On appeal,[7] P&R raises two issues. First, it argues that the Board erred in refusing to grant it status as a protestant because it is located within 200 feet of Giant. Second, it argues that the Board erred and abused its discretion in granting Giant's application for an intermunicipal double transfer of a restaurant liquor

---

[7] "An appellate court's standard of review over an appeal from an agency requires it to affirm the administrative adjudication unless it finds that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed, or that any necessary finding of fact is not supported by substantial evidence." *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 8 A.3d 885, 892 (Pa. 2010). "The 'error of law' component of the applicable standard of review may include an issue of statutory construction, over which our review is plenary." *Id.*

10

license because the license will harm P&R's market niche as a beer distributor, the value of which is entitled to protection by the Board.

## Analysis

We begin with a review of the relevant law. Section 404(a) of the Liquor Code grants the Board the discretion to deny a license application "if such new license, transfer or extension is applied for a place which is within two hundred feet of any other premises which is licensed by the board."[8] 47 P.S. §4-404(a). Under the Board's regulations, a licensee may file a protest or petition to intervene to challenge a license application. A protest may be filed by "[a] licensee whose licensed premises is located within 200 feet of the premises proposed to be licensed." 40 Pa. Code §17.11(a)(1). A petition to intervene may be filed by a licensee who can

---

[8] Section 404(a) states:

> (a) Upon receipt of the application and the proper fees, and upon being satisfied of the truth of the statements in the application that the applicant and management company or companies, if any, are the only persons in any manner pecuniarily interested in the business so asked to be licensed and that no other person will be in any manner pecuniarily interested therein during the continuance of the license, except as hereinafter permitted, and that the applicant is a person of good repute, that the premises applied for meet all the requirements of this act and the regulations of the board, that the applicant seeks a license for a hotel, restaurant or club, as defined in this act, and that the issuance of such license is not prohibited by any of the provisions of this act, the board shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club may, in its discretion, issue or refuse a license: Provided, however, That in the case of any new license or the transfer of any license to a new location or the extension of an existing license to cover an additional area the board may, in its discretion, grant or refuse such new license, transfer or extension … *if such new license, transfer or extension is applied for a place which is within two hundred feet of any other premises which is licensed by the board*….

47 P.S. §4-404(a) (emphasis added).

demonstrate a direct interest in an application for a new retail liquor license, retail malt or brewed beverage license, importing distributor or distributor license, or the transfer of these licenses, whether person-to-person, place-to-place, or both, or an extension of premises of these licenses, and who can further demonstrate that a Board decision contrary to the person's direct interest will cause the person to be aggrieved.

40 Pa. Code §17.12(a).

P&R argues the distance between the two premises should have been measured from the Giant entrance that is closest to its own entrance. P&R also argues it is entitled to protestant status because it shares a wall with Giant. However, this argument ignores the Board's regulations that govern the method of measurement between a licensed premises and a proposed licensed premises. Section 3.22[9] provides that the proposed licensed premises includes only the rooms designated in the application for license. Section 3.23[10] mandates that the

---

[9] Section 3.22 provides, in relevant part:

§3.22 Method of measurement.

For the purpose of establishing a uniform method of measurement, the following interpretation shall apply:

* * *

(2) *Other premises licensed by the Board.* The portion of the premises covered by the current license.

(3) *Place proposed to be licensed.* The rooms designated in the application for license.

40 Pa. Code §3.22 (emphasis in original).

[10] Section 3.23 reads, in part:

§3.23 Points for measurement.

(a) For the purpose of establishing uniform points of measurement, the following applies:

* * *

(2) *The part of the place proposed to be licensed nearest to the* church, hospital, charitable institution,

measurement begins at the part of the proposed licensed premises *nearest* to the existing licensed premises. In this case, the proposed licensed premises covers a 3,190-square-foot area within Giant's 55,533-square-foot sales floor. *See* R.R. 310a, 325a-26a. The area nearest to P&R is a 15-foot by 8-foot storage area. McIntyre testified that she followed the regulation's strictures precisely in reaching a final measurement of 222 feet. The wall shared between P&R and Giant is irrelevant. The proximity between P&R and Giant's front entrance is also irrelevant because the front entrance to Giant is not part of the proposed licensed premises. Based on the above, the Board did not err in refusing to grant P&R protestant status.

In any case, the Board found that P&R met the requirements for intervenor status. This allowed P&R to appear at the hearing, present testimony, cross-examine witnesses and argue before the hearing examiner. It is unclear to the Court why P&R is not satisfied with its participation in the license proceeding as an intervenor. Even had the Board found P&R was within 200 feet of the proposed licensed premises, that proximity would not be dispositive of the merits of Giant's application.

We next address P&R's argument that in granting Giant's application, the Board abused its discretion and engaged in favoritism. P&R asserts that the Liquor Code is to be liberally construed to limit the sale of alcohol, but the Board interpreted it to aid Giant's proposed expansion of alcohol sales.

The Liquor Code is to be construed "for the protection of the public welfare, health, peace and morals of the people of the Commonwealth." Section

---

school or public playground (and/or the adjoining ground used in connection therewith), and *other premises licensed by the Board.*

40 Pa. Code §3.23 (emphasis added).

13

104(a) of the Liquor Code, 47 P.S. §1-104(a). The Liquor Code does not promote the sale of liquor, but rather, regulates and restrains the sale of liquor. *Pittsburgh Stadium Concessions, Inc. v. Pennsylvania Liquor Control Board*, 674 A.2d 334, 336 (Pa. Cmwlth. 1996). The regulation of the sale of liquor does not authorize the Board to engage in economic protectionism as P&R suggests. The Liquor Code is devoid of a provision requiring the denial of an application because its grant will create competition between licensees. P&R is "not seeking to uphold the key tenets of the Liquor Code, but rather to protect [its own] perceived economic interests," a matter beyond the reach of the statute. *Malt Beverages*, 8 A.3d at 893.

P&R also argues that the Board erred in approving Giant's application because the beer garden will not be a restaurant as defined in Section 102 of the Liquor Code, 47 P.S. §1-102. P&R asserts that Giant seeks a "sham restaurant license" in a "veiled attempt to have the opportunity to sell takeout beer." P&R Brief at 36 (quoting *Malt Beverages*, 8 A.3d at 891).

Section 102 of the Liquor Code defines a "restaurant" as

a reputable place operated by responsible persons of good reputation and habitually and principally used for the purpose of providing food for the public, the place to have an area within a building of not less than four hundred square feet, equipped with tables and chairs, including bar seats, accommodating at least thirty persons at one time. The board shall, by regulation, set forth what constitutes tables and chairs sufficient to accommodate thirty persons at one time.

47 P.S. §1-102. The Board found that the proposed licensed premises will meet each of these definitive standards. The beer garden will have seating for 30 patrons and offer prepared foods for takeout as well as for consumption on the proposed licensed premises.

14

By contrast, the purchase of distilled spirits, draft beer, or wine for on-site consumption will not be permitted on the proposed licensed premises. Patrons will be limited to a 12-ounce serving of beer for on-premises consumption. Beer for carry out may be purchased in single bottles, 6-packs, or 12-packs with a limit of 192 fluid ounces per person. Purchases of wine will be limited to four bottles. Heap estimated that Giant's on-site beer consumption will be approximately two percent of its alcohol sales and takeout beer purchases will be 98 percent of said sales. *See* Board Opinion at 8, Findings of Fact Nos. 23-24, 26-27. In sum, the evidence of record shows that Giant will habitually and principally use the proposed licensed premises "for the purpose of providing food for the public." Section 102 of the Liquor Code, 47 P.S. §1-102.

Restaurants are entitled to a liquor license if they satisfy the applicable criteria in the Liquor Code. *Malt Beverages*, 8 A.3d at 896. Here, Giant satisfied the criteria for licensure set forth in the Liquor Code and in the Board's regulations.

### Conclusion

For all the above-stated reasons, we affirm the Board's order granting Giant's request for the intermunicipal double transfer of Restaurant Liquor License No. R-13859.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

P&R Beverage, Inc.,             :
           Petitioner     :
                         :
        v.             :   No. 1395 C.D. 2018
                         :
Pennsylvania Liquor Control Board,  :
           Respondent  :

## **O R D E R**

AND NOW, this 23rd day of August, 2019, the order of the Pennsylvania Liquor Control Board dated September 26, 2018, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge