**WATER STREET BEVERAGE, LTD.,**
**T/A Keller's Beer, Petitioner**

v.

**PENNSYLVANIA LIQUOR CONTROL**
**BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 9, 2013.

Decided Jan. 29, 2014.

James M. Petrascu, Harrisburg, and Charles L. Caputo, Pittsburgh, for petitioner.

Michael J. Plank, Assistant Counsel, Harrisburg, for Respondent.

Robert J. O'Hara, III, Stanley J. Wolowski and Thomas B. Henry, Pittsburgh, for intervenor Weis Market.

BEFORE: PELLEGRINI, President Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge McCULLOUGH.

Water Street Beverage, LTD., t/a Keller's Beer (Water Street) petitions for review of the May 1, 2013 order of the Pennsylvania Liquor Control Board (Board) granting the application of Weis Markets, Inc. (Weis) for double transfer of Eating Place Malt Beverage License E–4611 (the license) to property owned by Weis located at 719 Route 522, Selinsgrove, Snyder County, Pennsylvania (the property). We affirm.

The underlying facts of this case are not in dispute. Weis is in the process of constructing a new grocery store at the property, which will include an indoor café, limited outside seating, and gas pumps. The grocery store will encompass an area of approximately 66,000 square feet, with the café and outside seating areas accounting for approximately 5,600 square feet. The café will consist of: a serving area measuring 43 feet by 45 feet that will accommodate 32 patrons; a kitchen measuring 24 feet by 37 feet; and two storage areas measuring 16 feet by 16 feet and 10 feet by 32 feet, respectively. The outside seating areas will measure 21 feet by 8 feet and 53 feet by 53 feet, respectively, and accommodate a total of 20 patrons. The gas pumps will be installed approximately 340 feet from the grocery store and café and will be separated by parking spaces, trees, and islands of shrubbery. (Board's Findings of Fact Nos. 3–4, 19, 22, 29–34.)

On July 30, 2012, Weis filed an application with the Board for the double transfer of the license originally granted to Lauver Enterprises, Inc. t/a IT Xpress, 31 South Market Street, Selinsgrove, Pennsylvania.[1] Weis sought to sell malt beverages in the café area of the grocery store. Water Street, which operates a beer distributorship less than one mile from the property, filed a petition for intervention with the Board objecting to Weis' application. The Board's Bureau of Licensing directed that a hearing be held with respect to Weis' transfer application regarding the following eight objections:

1. The Board shall take evidence to determine if it should permit interior connections with the unlicensed grocery store, in accordance with Section 3.52(b) of the Board's Regulations [40 Pa.Code § 3.52(b) ].

2. The Board shall take evidence to determine whether it should permit the applicant to operate another business on the licensed premises (storage and preparation of food items for the unlicensed grocery store), in accordance with Section 3.52(c) of the Board's Regulations [40 Pa.Code § 3.52(c) ].

3. The Board shall take evidence to determine if the applicant will allow minors to frequent its licensed premises, in violation of Section 493(14) of the Liquor Code [Act of April 12, 1951, P.L. 90, as amended, 47 P.S. § 4–493(14) ].

4. The Board shall take evidence concerning the sale of liquid fuels or oil at the same location as the proposed licensed premises, which is prohibited under Section 432(d) of the Liquor Code [hereafter Code, 47 P.S. § 4–432(d) ].

5. The Board shall take evidence to determine if the Notice of Application has been continuously and conspicuously posted as required by Section 3.14 of the Board's Regulations [40 Pa.Code § 3.14].

6. The Board shall take evidence to determine if Matthew Silvinski is a resi-

---

1. A "double transfer" is a term used by the Board to refer to a transfer in both ownership

and location.

dent within 500 feet of the proposed licensed premises, which would qualify him as a valid protestant or, if he would be directly aggrieved by the granting of this application, which would qualify him as an intervenor in this matter.

7. The Board shall take evidence to determine if Water Street Beverage, Ltd. would be directly aggrieved by the granting of this application, which would qualify them (sic) as an intervenor in this matter.

8. The Board shall take evidence to determine that the approval of this application will not adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises.[2]

(Reproduced Record (R.R.) at 37a–38a.) The Board appointed a hearing examiner, who conducted a hearing on March 20, 2013. The Board conditionally accepted Water Street's intervention petition, thereby permitting Water Street to participate in the hearing. (Board's Findings of Fact Nos. 1–6, 76.)

Joseph Murray, a licensing analyst for the Board, conducted an investigation of Weis' application. His investigation revealed that, after several improper postings, the application was properly posted in November 2012. Murray testified that there were no proximity issues in regard to licensee or restrictive institutions located within 200–300 feet of the proposed licensed premises. Murray described the neighborhood within a radius of 500 feet of the proposed licensed premises as consisting of 25% residential, 25% rural/undeveloped, and 50% commercial. Murray stated that Weis owns the parcel of land where the proposed licensed premises will be constructed, as well as the proposed gasoline pumps and supermarket. (Board's Findings of Fact Nos. 7, 13, 16–17, 23.)

Additionally, Murray testified that Weis' plans for the proposed licensed premises will meet the Board's requirements with respect to seating, including two outside serving areas, and interior connections to the unlicensed grocery store, noting that section 468(e) of the Code, 47 P.S. § 4–468(e), restricts the width of an interior connection between a licensed business and another business to no more than ten feet. Murray indicated that the licensed premises, including the kitchen and outside seating areas, would encompass approximately 5,600 square feet. Murray stated that food items prepared in the proposed licensed premises' kitchen could also be displayed and sold in the unlicensed grocery store. Murray noted that gasoline pumps will be installed approximately 340 feet from the licensed premises and will be separated by parking spaces, trees, and shrub islands. Murray stated he investigated Weis' licensed cafés in Sunbury and Lewisburg and noted that the present application was similar to the applications for those stores. (Board's Findings of Fact Nos. 19–25, 34–38.)

Jack O'Hara, Weis' vice president of legal affairs and real estate, testified that Weis owns the tract of land on which the grocery store, café, and fuel pumps will be located. O'Hara indicated that the grocery store and café will have separate entrances, as well as an interior connection, with cash registers in each section. The café will consist of a series of counters for the display and sale of different foods, pizza ovens, a rotisserie oven, sandwich preparation areas, fryers, beer coolers, and

**2.** Objections 4 and 7 are the only relevant objections for purposes of this appeal and we will focus on those objections below.

displays for beer at room temperature. O'Hara noted that beer will be sold only in the café, subject to a 100% carding policy, and all café employees will be at least 21 years old and receive training through the Board's Responsible Alcohol Management Program. Additionally, O'Hara testified that the café will have its own manager who will have no responsibilities in the unlicensed grocery store. (Board's Findings of Fact Nos. 27–62.)

With respect to the gas pumps, O'Hara testified that there will be four pumps with eight fueling stations. The gas pumps will be monitored by an employee stationed in a kiosk area in between the pumps, with the kiosk containing certain convenience items, such as cigarettes, snacks, and candy for sale to customers. O'Hara indicated that the actual distance from the corner of the proposed licensed premises to the corner of the canopy over the gas pumps will be 378 feet, separated by: a sidewalk with curbing; a driving lane with a minimum width of 24 feet; six concrete landscape islands with plants, bushes, and trees running parallel to the storefront; a parking lot area; concrete islands between the parking lot and gas pumps; and another driving lane. Customers will be able to pay for gas only at the kiosk or at the pump. Additionally, O'Hara noted that Weis' stores in Sunbury, Bellefonte, Easton, and Lewisburg contain both Board-licensed cafés and gas pumps. (Board's Findings of Fact Nos. 63–72.)

Matthew Viens, owner of Water Street, testified that he purchased the business, which sells cases and kegs of beer, salty snacks, tobacco products, lottery tickets, soda, water, and ice, in 2008. Viens estimated that beer accounts for approximately 93% of his total sales. He noted that his business cannot sell prepared food items or gasoline, which resulted in a competitive advantage for Weis. Viens indicated that he has approximately $400,000.00 invested in his business, and he employs two full-time and three part-time employees. Viens stated that he has witnessed Weis selling beer for only pennies over cost, almost at a loss. Viens noted that after Weis opened its Sunbury store, three distributors closed, but two reopened after one year. Viens could not explain why these distributors closed and then reopened. Viens believed that his business would have a significant loss of beer sales if Weis' application was granted. (Board's Findings of Fact Nos. 76–86.)

Viens acknowledged that an economic impact analysis could determine the effect that one business would have on existing businesses. He also acknowledged that the Board maintains a list of food and non-food items that distributors can sell. He stated that while he chose not to sell several items, he was not aware of other items that he could sell. Viens indicated that he has a large number of regular customers and the amount of customers he might lose would depend on Weis' pricing. Viens noted that customer impulse buying was not a big part of his business, but it would be for Weis. (Board's Findings of Fact Nos. 88–100.)

John Roland Dunham, managing partner of an economic research firm, testified that he conducted an economic impact analysis to determine the effect that Weis obtaining a license would have on Water Street and other beer distributors in Snyder County. Dunham noted that there was no data or economic theories or principles to support Viens' beliefs regarding the granting of Weis' application. Dunham estimated that for every new retail license that comes to a given area, other licensees would lose about $400.00 in sales, but he expected a net increase in beer sales of $178,000.00 for the entire area. Dunham noted that distributors are unique because

they can sell bulk beer to another retail licensee, thereby creating a general market area. Dunham also noted that the number of active beer distributor licenses has remained steady since 2007, despite the fact that 117 new grocery store/café licenses have been granted during that period of time. (Board's Findings of Fact Nos. 103–28.)

Dunham ultimately opined that any harm to Water Street would be extremely minor, explaining that every retailer has to purchase beer from a distributor and that Water Street can compete for these sales. Contrary to Viens, Dunham believes that Water Street's sales would actually increase if Weis' application were granted. He noted that customers could go to a distributor and purchase larger volumes at a lower price, especially with respect to craft or imported beers. (Board's Findings of Fact Nos. 129–39.)

The hearing examiner prepared a recommended opinion and order granting Weis' application and Water Street's petition for intervention. By order dated May 1, 2013, the Board approved Weis' application. In a subsequent opinion, the Board noted that section 432(d) of the Code provides, in relevant part, that the Board "shall refuse ... the transfer of any license to a location where the sale of liquid fuels or oil is conducted...."[3] 47 P.S. § 4–432(d). However, the Board concluded that liquid fuels would not be sold at the same location as the proposed licensed premises. The Board noted that the Code does not define "location" and, thus, it turned to the "common and approved usage" as instructed by section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.

C.S. § 1903(a).[4] (Board's decision at 57–58.)

The Board stated that the record shows that Weis will be selling gasoline at a location that is approximately 378 feet from the proposed licensed premises and separated by numerous barriers. The Board noted that the gas pumps will have a dedicated employee with no responsibilities on the proposed licensed premises and the gasoline must be paid for at the gas kiosk or directly at the pumps. Hence, the Board found that, under a reasonable and practical interpretation of the term "location," the record indicates that Weis has taken appropriate measures to show that its liquid fuels would be sold at a different location from the proposed licensed premises. (Board's decision at 58–59.)

With respect to the intervention petition of Water Street, the Board cited section 17.12(a) of its regulations, which permits intervention by a person who "can demonstrate a direct interest in an application for ... the transfer of [a retail malt or brewed beverage license] ... and who can further demonstrate that a Board decision contrary to the person's direct interest will cause the person to be aggrieved...." 40 Pa.Code § 17.12(a). The Board noted Viens' concerns that the granting of Weis' application would cause financial harm because his distributorship cannot sell the range of food and non-food items that Weis can; it would be more convenient for customers to purchase beer from Weis; Weis could sell the beer at slightly over cost; and Weis could sell beer in smaller quantities. The Board stated that these issues are not new and have been previously addressed by the Board, citing numerous

---

3. As noted above, our discussion will focus solely on Objections 4 and 7.

4. This section states that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...."

cases where distributors and/or the Malt Beverages Distributors Association were granted intervention in similar proceedings involving Sheetz and Wegmans Food Markets.[5] Given the similar nature of the issues raised in those cases and the present case, the Board concluded that Water Street had shown that it would be directly aggrieved by the grant of Weis' application. (Board's decision at 65–71.)

On appeal,[6] Water Street argues that the Board erred in approving the transfer of the license to Weis for use at a location where the sale of liquid fuels will be conducted in violation of sections 432(d) and 468(a)(3) of the Code.[7] However, before we reach the merits of this argument, we must first address Weis' contention that the Board abused its discretion and/or erred in granting Water Street's petition for intervention.[8] We disagree with Weis.

We begin by noting that the grant or denial of a petition to intervene is within the sound discretion of the agency involved, and a decision on intervention will not be disturbed unless there has been a manifest abuse of discretion. *Malt Beverages II.* As discussed above, section 17.12 of the Board's regulations addresses intervention in license application matters, providing as follows:

(a) A person who can demonstrate a direct interest in an application for a new retail liquor license, retail malt or brewed beverage license, importing distributor or distributor license, or the transfer of these licenses, whether person-to-person, place-to-place, or both, or an extension of premises of these licenses, and who can further demonstrate that a Board decision contrary to the person's direct interest will cause the person to be aggrieved may file a petition to intervene.

(b) The petition to intervene may be granted at the discretion of the Board. The Board may grant or deny the petition in whole or in part or may authorize limited participation. In rendering its decision, the Board will consider whether the petitioner has a direct interest in the proceeding and will be aggrieved by a Board decision contrary to that direct interest.

40 Pa.Code § 17.12.

Additionally, we have held that a person seeking to intervene must have a

---

**5.** *See Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board,* 881 A.2d 37 (Pa.Cmwlth.2005) (*Malt Beverages I* ), *appeal denied,* 586 Pa. 775, 895 A.2d 1264 (2006); *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board,* 965 A.2d 1254 (Pa.Cmwlth.2009) (*Malt Beverages II* ), *aff'd,* 607 Pa. 560, 8 A.3d 885 (2010); *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board,* 965 A.2d 1269 (Pa.Cmwlth.2009) (*Malt Beverages III* ), *aff'd,* 607 Pa. 560, 8 A.3d 885 (2010); *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board,* 966 A.2d 1165 (Pa.Cmwlth.2009) (*Malt Beverages IV* ), *aff'd,* 607 Pa. 560, 8 A.3d 885 (2010); *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board,* 966 A.2d 1172 (Pa. Cmwlth.2009) (*Malt Beverages V* ), *aff'd,* 607 Pa. 560, 8 A.3d 885 (2010); *Malt Beverages Distributors Association v. Pennsylvania Li-* *quor Control Board,* 966 A.2d 1180 (Pa. Cmwlth.2009) (*Malt Beverages VI* ), *aff'd,* 607 Pa. 560, 8 A.3d 885 (2010).

**6.** Our scope of review of the Board's decision is limited to determining whether there was a constitutional violation or an error of law, whether the practices and procedures of the Board were followed, and whether necessary findings of fact were supported by substantial evidence in the record. *Malt Beverages I.*

**7.** Section 468(a)(3) provides that "[n]o license shall be transferred to any place or property upon which is located as a business the sale of liquid fuels and oil." 47 P.S. § 4–468(a)(3).

**8.** On June 3, 2013, Weis filed a notice of intervention with this Court.

substantial interest, that is, there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. *Malt Beverages II*. Further, the person's interest must be direct, which means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains. *Id.* The interest must also be immediate and not a remote consequence of the judgment. *Id.*

Weis relies on this Court's unreported decision in *Schneller v. Pennsylvania Liquor Control Board*, 2011 WL 10857605 (Pa.Cmwlth., No. 1853 C.D.2010, filed October 26, 2011), for support.[9] In *Schneller*, the petitioner sought to intervene with respect to an application to transfer a restaurant liquor license to a proposed new restaurant with outdoor seating to be located in a strip mall in Wayne, Pennsylvania that contained an Acme grocery store, a pharmacy, a bank, and a convenience/gasoline station. The petitioner objected to the transfer, asserting that the restaurant's location is a family-oriented community shopping area and the serving of alcohol would ruin the location's character and worsen the situation at an already unsafe, congested intersection. The petitioner also claimed that neighboring citizens, including the elderly, families, and the morally inclined, would be deeply affected by the license application and that the outdoor activity at the proposed premises would affect his moral comfort, particularly when he travels to his nearby church.

The Board denied intervention, concluding that the petitioner failed to show that the transfer of the liquor license would directly result in legally cognizable injury to him. The Board explained that the petitioner failed to present evidence that immediate substantial harm will befall him if the application is granted; failed to present evidence concerning the specific manner in which the proposed premises will be operated, let alone that such operation would directly result in a legally cognizable injury to him; and failed to present specific evidence that the applicant, by reputation, prior or acknowledged business practice, or admission, would serve its patrons to the point of impairment, create hazardous traffic conditions, or conduct a disruptive operation. The Board described the petitioner's complaints as unsubstantiated fears, or at best, concerns for the general welfare of the community and potentialities of harm, which did not sustain a finding of aggrievement. The Board also observed that the petitioner's concerns about traffic, noise, unsafe driving, and his general aversion to licensed establishments amounted to mere speculation and personal preference. This Court affirmed the Board's denial of intervention, agreeing with the Board that the petitioner's assertions of harm expressed general concerns for the welfare of the community, were speculative in nature, and were otherwise insufficient to show that he would be directly and substantially harmed by the liquor license transfer.

In contrast to *Schneller*, in the present case, Viens testified as to his specific concerns regarding the financial sustainability of his distributorship business, especially given his inability to sell the range of food and non-food items that Weis can, the convenience for Weis customers to purchase beer, Weis' ability to sell the beer at slightly over cost, and Weis' ability to sell beer in smaller quantities. Viens explained that he was at a competitive disad-

---

9. Pursuant to section 414(a) of this Court's Internal Operating Procedures, parties may cite to an unreported panel decision of this Court issued after January 15, 2008, for its persuasive value, but not as binding precedent.

vantage when these factors are taken into consideration. Thus, this matter is distinguishable from *Schneller* and Weis' reliance on *Schneller* is misplaced.

Having reviewed the record, we conclude that Viens presented sufficient evidence to establish the potential for direct and substantial harm to his business. Moreover, we disagree with Weis that the Board's reliance on the *Sheetz* and *Malt Beverages* cases was in error. The focus of those cases, similar to the present case, was the transfer of a retail liquor license to a gas/convenience store and multiple grocery stores and the economic impact of such a transfer on surrounding beer distributorships. Because Water Street presented sufficient evidence establishing a direct interest in, and potential aggrievement by, the grant of Weis' application, we conclude that the Board did not err in granting Water Street's petition for intervention.

■ We now turn to the merits of Water Street's argument, i.e., that the Board erred in approving the transfer of the license to Weis for use at a location where the sale of liquid fuels will be conducted in violation of sections 432(d) and 468(a)(3) of the Code. We begin with Water Street's citation to section 468(a)(3) of the Code. In its letter setting a hearing date and identifying the specific issues to be discussed with respect to the objections to Weis' application, the Board's Bureau of Licensing only referenced section 432(d) of the Code. Similarly, Water Street's intervention petition makes no reference to section 468(a)(3). Thus, any argument in relation to this section is waived. *See The Pittsburgh Stake of the Church of Jesus Christ of Latter Day Saints v. Liquor Control Board*, 151 Pa.Cmwlth. 523, 617 A.2d 843 (1992) (holding that failure to raise an objection under a specific section of the Code constitutes a waiver of any argument related to that section).

■ Section 432(d) of the Liquor Code provides that:

The board shall, in its discretion, grant or refuse any new license, the transfer of any license to a new location or the extension of an existing license to cover an additional area if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground, or if such new license, transfer or extension is applied for a place which is within two hundred feet of any other premises which is licensed by the board. The board shall refuse any application for a new license, the transfer of any license to a new location or the extension of an existing license to cover an additional area if, in the board's opinion, such new license, transfer or extension would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place to be licensed.... *The board shall refuse any application for a new license, the transfer of any license to a location where the sale of liquid fuels or oil is conducted* ....

47 P.S. § 4–432(d) (emphasis added).

Water Street argues that the Board disregarded the plain language of this section, directing it to "refuse any application for ... the transfer of any license to a location where the sale of liquid fuels or oil is conducted," and unnecessarily resorted to the Statutory Construction Act of 1972. However, neither the Code nor its regulations defines the term "location." Water Street suggests an interpretation of "location" as a "single tract of land." However, such an interpretation is unreasonable and could lead to absurd results. As Weis notes in its brief to this Court, under

Water Street's interpretation, an applicant could operate a licensed premises only steps away from gas pumps so long as the pumps and licensed premises are on separate deeds.

The Board concluded that the "reasonable and practical interpretation" of this term indicates that Weis will sell liquid fuels at a different location from the proposed licensed premises. The Board cited numerous factors in support of this conclusion, including that the gasoline will be sold approximately 378 feet from the proposed licensed premises and will be separated by numerous barriers. Both our Supreme Court and this Court have previously held that the Board's interpretation of the Code and its regulations is entitled to deference unless clearly erroneous. *Pennsylvania Liquor Control Board v. Richard E. Craft American Legion Home Corporation*, 553 Pa. 99, 718 A.2d 276 (1998); *Malt Beverages II.*

Furthermore, we note that the Board's interpretation of the term "location" in this case, and its conclusion that the licensed premises and the gas pumps occupied different locations, is consistent with the Code and its regulations. For example, section 432(a) of the Code, 47 P.S. § 4–432(a), requires both the applicant and the premises to meet the requirements of the Code and its regulations. Section 432(d) provides the Board with discretion to grant or refuse the transfer of a license to a new location "or the extension of an existing license to cover an additional area if such place proposed to be licensed" is within 300 feet of certain institutions, such as a church, hospital, school, or public playground. Section 436(b) mandates that an application for a retail dispensers license contain a "detailed description" of the particular place for which a license is sought, 47 P.S. § 4–436(b), and section 436(h) similarly mandates a **"full descrip-tion of that portion of the premises"** for which a license is sought, 47 P.S. § 4–436(h) (emphasis added).

Section 3.22 of the Board's regulations notes that "[o]ther premises licensed by the Board" shall be interpreted as "**[t]he portion of the premises** covered by the current license" and "[p]lace proposed to be licensed" shall be interpreted as "[t]he rooms designated in the application for license." 40 Pa.Code § 3.22(2), (3) (emphasis added). Additionally, section 3.53 provides that "[w]here the Board has approved the operation of another business which has an inside passage or communication to or with the licensed premises, storage and sales of liquor and malt or brewed beverages shall be **confined strictly to the premises covered by the license.**" 40 Pa.Code § 3.53 (emphasis added). Further, in these situations, section 3.54 mandates a permanent partition at least four feet high between the licensed and unlicensed premises, 40 Pa.Code § 3.54, and section 3.55 prohibits alcohol or liquor from being "stored, kept, possessed or sold on the premises used for such other [unlicensed] business." 40 Pa. Code § 3.55. Section 3.56 requires that "**[t]he premises covered by a license** shall meet all requirements of the Liquor Code and of this part for the license **exclusive of space devoted to other business** operated in conjunction therewith." 40 Pa. Code § 3.56 (emphasis added).

Moreover, section 7.8 requires an applicant to submit "floor plans ... depicting **all areas** to be licensed," 40 Pa.Code § 7.8 (emphasis added), and if not yet constructed, section 7.9 requires "site plans" depicting "the location of the proposed licensed premises in relation to identifiable property lines or easily identifiable landmarks or reference points with measurements to the property lines, landmarks or reference points." 40 Pa.Code § 7.9. Section 7.21

prohibits a licensee from conducting business "on another premise or a portion of the same premise other than that for which the license was issued without the approval of the Board for the inclusion of the additional premises in the license." 40 Pa.Code § 7.21. Thus, a review of the Code and the aforementioned regulations reveals that a license is granted to a specific "location," i.e., premises, with clearly defined parameters, especially, as in this case, when a licensed premises is interiorly connected to an unlicensed premises/business.

Case law also supports the Board's interpretation. In *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 607 Pa. 560, 8 A.3d 885 (2010), the Supreme Court affirmed our decisions in *Malt Beverages II–VI* holding that the proposed restaurants within certain Wegmans supermarkets complied with the applicable provisions of the Code and the Board's regulations and, hence, were proper licensees. The Court rejected the argument of the Malt Beverages Distributors Association that the proposed restaurants were really just part of the supermarket/grocery store, which is prohibited from selling malt liquor. The Court emphasized that the Board had approved the interior connection between the restaurants and the supermarket and that Wegmans had made a physical distinction between the proposed licensed premises, i.e., the restaurants, and the rest of the store.

In *Malt Beverages II*, this Court affirmed the Board's grant of an application by Wegmans Food Markets, Inc. for a restaurant liquor license for a café to be located within its supermarket store in Bethlehem, Pennsylvania. In granting the application and approving the interior connection between the licensed premises and the unlicensed supermarket, the Board determined that the proposed licensed area would be clearly separated from the unlicensed portions of the premises. The Board further noted that the licensed area would be marked by four-foot walls, all beer purchases would be restricted to the licensed portion of the premises at dedicated cash registers, and there would be a physical distinction between the licensed area and the rest of the store.

In *Thompson v. Pennsylvania Liquor Control Board*, 22 Pa.Cmwlth. 344, 348 A.2d 916 (1975), this Court affirmed the common pleas court's reversal of the denial of a transfer of a liquor license to a residence within the borough of Tarentum in which the owners intended to operate a restaurant/lounge. The Board had denied the transfer, concluding the proposed licensed premises was within 300 feet of a public playground, as measured from the property line of the premises.[10] The common pleas court concluded that the Board improperly used the property line as the reference point for determining the distance to the playground. The common pleas court noted that the building line was the proper reference point and that the public playground was more than 300 feet from this line. Citing section 3.22(3) of the Board regulations interpreting the "[p]lace proposed to be licensed" as "[t]he rooms designated in the application for license," this Court held that the building line was indeed the proper reference point for the distance calculation.

Here, the Board has interpreted, and our Court affirms that the term "location"

---

**10.** Section 404 of the Code provides, in pertinent part, that "the board may, in its discretion, grant or refuse such new license, transfer or extension if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground...." 47 P.S. § 4-404.

is defined in relation to the particular area of a licensed premises. Sections 432 and 436 of the Code, as well as sections 3.22, 3.53–3.56, 7.8–7.9, and 7.21 of the Board's regulations, consistently refer to the specific "premises," "place," or "portion" to be licensed. Although section 432(d) of the Code does not define "location," the Board's interpretation of this term is reasonable and supported by the aforementioned sections of the Code and existing regulations, as well as established case law. Based on all of the above, and in light of the deference to be afforded to the Board's interpretation of the Code and its regulations, the Board did not err in approving Weis' transfer application.

Accordingly, the order of the Board is affirmed.

Judge McGINLEY did not participate in this decision.

## ORDER

AND NOW, this 29th day of January, 2014, the order of the Pennsylvania Liquor Control Board, dated May 1, 2013, is hereby affirmed.