IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Malt Beverage Distributors     :
Association, Gabler's Beverage    :
Distributor, Inc. and PKD, Inc.,    :
      Petitioners    :
             :   No. 1352 C.D. 2014
     v.        :
             :   Argued: June 15, 2015
Pennsylvania Liquor Control Board,   :
      Respondent    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE McCULLOUGH            FILED: July 31, 2015


    Malt Beverage Distributors Association (MBDA), Gabler's Beverage Distributor, Inc. (Gabler's), and PKD, Inc., (collectively, Petitioners) petition for review of the July 17, 2014 order of the Pennsylvania Liquor Control Board (Board), which approved Ohio Springs, Inc.'s t/a Sheetz (Applicant) application for intermunicipal double transfer of Restaurant Liquor License No. R-19377 (License).


### Facts/Procedural History

    On July 30, 2012, Applicant filed a prior approval application for intermunicipal double transfer[1] of the License from Ruby Tuesday to Applicant's

---

    [1] A "double transfer" is a term used by the Board to refer to a transfer in both ownership and location.

restaurant located at 359 East King Street, Shippensburg, Pennsylvania under section 404 of the Liquor Code (Code).[2] Applicant's proposed licensed restaurant presently includes: a 32'x18' serving area that will accommodate 38 patrons; 2 serving areas, 80'x37' and 10'x6', with no seating for patrons; 2 kitchen areas measuring 30'x23' and 58'x12'; a 9'x10' office area; and 7 storage areas, ranging from 22'x38' to 7'x7'. (Board's Findings of Fact Nos. 1, 3.)

At the same site, Sheetz, Inc., operates a convenience store and fuel pumps. Both the restaurant and the convenience store/fuel station operate under the trade name "Sheetz Convenience Store." (Reproduced Record (R.R.) at 111a-12a.)

On July 17, 2012, the Borough of Shippensburg (Borough) adopted Resolution No. 12-015, approving the proposed intermunicipal transfer of the License into the Borough. The Board's Bureau of Licensing informed Applicant that a hearing would be held regarding the application on March 18-19, 2014. (Board's Findings of Fact Nos. 8-9.)

At the hearing,[3] Timothy Lamark (Lamark), a Board licensing supervisor, testified that the property at 359 East King Street has been subdivided into two condominium units with two separate lease agreements. Lamark stated that there is a four-foot opening in a wall that connects the proposed licensed restaurant to the unlicensed convenience store but that the submitted site plan does not distinguish

---

[2] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §4-404.

[3] The Board granted standing as intervenors in the instant matter to MBDA, Gabler's, and PKD, Inc. The Board denied intervenor standing to Alvin Oberholtzer, Sharon Hershey, Lewis Deardorff, Luke and Lois Martin, John Mummau, James Andrews, and Terry Helm. The Board granted standing as protestants to Jaye Alleman and the Civic Club of Shippensburg. Standing has not been challenged by any party on appeal to this Court.

them and refers to the entire premises as Sheetz Store #70.[4] He testified that 359 East King Street is the same address for both premises. (R.R. at 54a, 58a, 63a, 65a.)

Lamark further testified that liquid fuels are sold at the unlicensed premises. Lamark stated that the distance between the restaurant and the fuel pumps is 80 feet, which includes a speed bump, a tapered curb, a front concrete area, a patio area, and a parking lot. Lamark stated that the restaurant has no outdoor serving area, but there is an outdoor eating area that restaurant patrons may use. (R.R. at 54a, 60a-61a, 64a, 67a.)

John Campbell (Campbell), the regional director of operations for Sheetz, Inc., testified that there are two separate businesses at the 359 East King Street location, a convenience store and a restaurant. Campbell stated that Applicant operates the restaurant, and Sheetz, Inc., operates the convenience store and fuel pumps. He said that Applicant does not own the property and that there are two separate lease agreements; one for the location of the convenience store and one for the location of the restaurant. Campbell stated that the restaurant would be separated from the convenience store by an eight-foot-high wall with a four-foot-wide opening. Campbell acknowledged that the restaurant, the convenience store, and the fuel pumps are all operating under the trade name "Sheetz Convenience Store." (R.R. at 111a-12a, 124a.)

Campbell testified that the restaurant has its own entrance and a dining area that seats 37 patrons. He said that Applicant is prepared to increase its staff and have signs indicating the separate entities of the restaurant and the convenience store so that merchandise will not be intermingled. Campbell noted that a steel fence and a

_____

[4] Under section 468(e) of the Code, "the board may not approve an interior connection that is greater than ten feet wide between a licensed business and another business." 47 P.S. §4-468(e).

sidewalk further separate the restaurant from the fuel pumps. Campbell stated that customers will only be able to purchase fuel by credit and debit cards at the fuel pumps; they will not be able to purchase fuel at the convenience store or at the restaurant. (R.R. at 113a, 120a, 134a-35a, 140a.)

John Kuchar, Sheetz, Inc.'s real estate counsel, testified that the property containing the restaurant and the convenience store has been separated into two condominium units, with Unit 1 having an address of 354 East King Street and Unit 2 having an address of 359 East King Street. (R.R. at 190a.) The lease agreements support the testimony that the restaurant has a 354 East King Street address and the convenience store has a 359 East King Street address, (R.R. at 290a, 303a), but Applicant's transfer application lists only the 359 East King Street address. (R.R. at 1a.)

Stephen Gabler (Gabler), owner of Gabler's, testified that his beverage distributorship is approximately four and a half blocks from the Sheetz Convenience Store. He stated that he is concerned that the sale of beer at a convenience store that sells liquid fuels would provide an unfair advantage to Applicant. Gabler acknowledged that he would not have a reason to object if Applicant was not selling liquid fuels on the premises. (R.R. at 212a-13a.) Patrick Diehl, owner and president of PKD, Inc., his beer distributorship, testified that PKD, Inc., is approximately four blocks from the Sheetz Convenience Store. He stated that he objected to the License transfer because Applicant will sell liquid fuels and alcohol on the same property. (R.R. at 224a.)

Mark Tanczos (Tanczos), president of MBDA, testified that MBDA is a trade association for Pennsylvania's beer distributors, of which Gabler's and PKD, Inc., are members. Tanczos stated that MBDA is objecting to the License transfer

4

because Applicant will be selling liquid fuels and alcohol on the same property. He said that a chain, such as Sheetz, is able to purchase mainstream beer at a reduced price that is not available to distributors and taverns. (R.R. at 226a-27a, 234a.)

The hearing examiner issued a recommended opinion, concluding that the application for License transfer should be denied because Applicant would be selling liquid fuels and alcohol on the same property in violation of sections 404 and 468 of the Code. The hearing examiner stated that sections 404, 431, and 432 of the Code contain identical provisions under which the Board must refuse any application for a new license or the transfer of any license to a new location "where the sale of liquid fuels or oil is conducted." 47 P.S. §§4-404, 4-431(b), 4-432(d).

However, the hearing examiner determined that section 468 is distinguishable from sections 404, 431, and 432, because it prohibits the transfer of a liquor license to any "place" or "property" where liquid fuels and oil are sold. 47 P.S. §4-468(a)(3).

The hearing examiner concluded that the terms "place" and "property" are more encompassing and cannot have the same meaning as the term "location." The hearing examiner distinguished this case from our decision in *Water Street Beverage, LTD v. Pennsylvania Liquor Control Board*, 84 A.3d 786 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014), stating that this Court only considered the facts of that case in interpreting the word "location" in section 432(d) of the Code. The hearing examiner further found that there are no physical demarcations separating the two condominium units, as both the convenience store and the restaurant contain logos, trademark colors, and signage identifying the property as a Sheetz operation.

The hearing examiner further opined:

5

Therefore it is submitted the "property" at issue is not condominium unit 1, a separate interest in land containing solely the proposed licensed premises which distinction the Commonwealth Court rejected, but that "piece of land with a building on it" consisting of 1.64 acres. Additionally the "place" at issue is the "locality" clearly displaying to the general public the "situation" of a standardized Sheetz food, fuel and convenience store operation, of which hundreds presently exist.

It is submitted that section 468(a)(3)'s specific reference to "place" and "property" is not synonymous repetition of the identical "location" restrictions contained within sections 404, 431 and 432 regarding particular classes of licenses, in that such characterization would lead to the conclusion that this provision is mere surplusage to be disregarded rather than accorded distinct, independent and comprehensive application to all license transfers. This interpretation of mere duplication would in turn lead to an unreasonable and absurd result which under the Statutory Construction Act the General Assembly clearly did not intend. 1 Pa.C.S. §1922(i).

(R.R. at 580a-81a.) The hearing examiner concluded that this interpretation is consistent with the purpose of the Code to "prohibit . . . transactions in liquor, alcohol and malt or brewed beverages . . . ." (R.R. at 582a) (citing section 104(c) of the Code, 47 P.S. §1-104(c)). Accordingly, the hearing examiner recommended that the Board deny Applicant's application for License transfer.[5]

On July 17, 2014, the Board issued an order granting the application for transfer of the License. In its opinion, the Board noted that, although the term "location" is found in sections 404, 431(b), and 432(d) of the Code, section 468(a)(3)

---

[5] Further, the hearing examiner recommended denial of the application for License transfer because the proposed licensed restaurant would be within 300 feet of a charitable institution, in violation of section 404 of the Code. The hearing examiner also took evidence regarding issues of standing and violations of the Code and the Board's regulations. However, none of these issues are raised on appeal.

6

of the Code uses the terms "place" and "property." The Board reasoned that this Court, in *Water Street Beverage*, in upholding the Board's initial determination, interpreted the term "location" in section 432(d) to allow "an applicant applying for an eating place malt beverage license to have gasoline pumps located off its proposed licensed premises." (Board's op. at 113.) Reading section 468(a)(3) *in pari materia* with sections 404, 431(b), and 432(d), the Board determined that the terms "place" and "property" should be interpreted similarly with the term "location."

> The Board explained as follows:
>
> The record shows the gasoline pumps will be located approximately eighty (80) feet from Applicant's proposed licensed premises, and between the proposed licensed premises and the gas pumps, there will be a sidewalk, ballards, parking stalls, macadam drive area, and a speed bump.
>
> The record provides that Sheetz, Inc. will have an employee located inside the unlicensed convenience store who will be responsible for the proposed gas pumps. Also, the record provides that gasoline may only be purchased at the gas pumps and the employees who are working at Applicant's proposed licensed premises will not have any involvement with the gas pumps.
>
> Therefore, the Board finds that liquid fuels will not be sold at the same location as the proposed licensed premises, and as such, there is no violation of sections 404 and 468 of the [Code].

(Board's op. at 113-14.)[6]

---

[6] The Board also addressed the same issues concerning standing and violations of the Code and the Board's regulations discussed in the hearing examiner's recommended opinion.

## Discussion

On appeal to this Court,[7] Petitioners argue that the Board erred in its interpretation of the terms "place," "property," and "location" in sections 404 and 468(a)(3) of the Code when it granted Applicant's application for License transfer.

We note that "an administrative agency's interpretation of a statute is given controlling weight unless it is clearly erroneous." *Pennsylvania Liquor Control Board v. Richard E. Craft American Legion Home Corporation*, 718 A.2d 276, 278 (Pa. 1998).

Section 404 of the Code (pertaining to the issuance, transfer, or extension of hotel, restaurant, and club liquor licenses) provides that: "The board shall refuse any application for a new license, the transfer of any license to a new location or the extension of any license to cover an additional area where the sale of liquid fuels or oil is conducted." 47 P.S. §4-404.[8] Section 431(b) of the Code

---

[7] "An appellate court's standard of review over an appeal from an agency requires it to affirm the administrative adjudication unless it finds that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed, or that any necessary finding of fact is not supported by substantial evidence." *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 8 A.3d 885, 892 (Pa. 2010). "The 'error of law' component of the applicable standard of review may include an issue of statutory construction, over which our review is plenary." *Id.*

[8] Section 404 of the Code states in pertinent part as follows:

> Upon receipt of the application and the proper fees, and upon being satisfied . . . that the premises applied for meet all the requirements of this act and the regulations of the board, that the applicant seeks a license for a hotel, restaurant or club, as defined in this act, and that the issuance of such license is not prohibited by any of the provisions of this act, the board shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club may, in its discretion, issue or refuse a license: Provided, however, That in the case of any new license or the transfer of any license to a

**(Footnote continued on next page…)**

(pertaining to malt and brewed beverages manufacturers', distributors', and importing distributors' licenses) states that: "The board shall refuse any application for a new license or the transfer of any license to a location where the sale of liquid fuels or oil is conducted." 47 P.S. §4-431(b).[9] Section 432(d) of the Code states that: "The

---
**(continued…)**

> new location or the extension of an existing license to cover an additional area the board may, in its discretion, grant or refuse such new license, transfer or extension if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground, or if such new license, transfer or extension is applied for a place which is within two hundred feet of any other premises which is licensed by the board: And provided further, That the board's authority to refuse to grant a license because of its proximity to a church, hospital, charitable institution, public playground or other licensed premises shall not be applicable to license applications submitted for public venues or performing arts facilities: And provided further, That the board shall refuse any application for a new license, the transfer of any license to a new location or the extension of an existing license to cover an additional area if, in the board's opinion, such new license, transfer or extension would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed: And provided further, That the board shall have the discretion to refuse a license to any person or to any corporation, partnership or association if such person, or any officer or director of such corporation, or any member or partner of such partnership or association shall have been convicted or found guilty of a felony within a period of five years immediately preceding the date of application for the said license. *The board shall refuse any application for a new license, the transfer of any license to a new location or the extension of any license to cover an additional area where the sale of liquid fuels or oil is conducted.*

47 P.S. §4-404 (emphasis added).

[9] Section 431(b) provides in relevant part as follows:
**(Footnote continued on next page…)**

9

board shall refuse any application for a new license, the transfer of any license to a location where the sale of liquid fuels or oil is conducted or the extension of an existing license to cover additional area[.]" 47 P.S. §4-432(d).[10] Section 468(a)(3) of

---

**(continued…)**

The board shall issue to any reputable person who applies therefor, and pays the license fee hereinafter prescribed, a distributor's or importing distributor's license for the place which such person desires to maintain for the sale of malt or brewed beverages, not for consumption on the premises where sold, and in quantities of not less than a case or original containers containing one hundred twenty-eight ounces or more which may be sold separately as prepared for the market by the manufacturer at the place of manufacture. The board shall have the discretion to refuse a license to any person or to any corporation, partnership or association if such person, or any officer or director of such corporation, or any member or partner of such partnership or association shall have been convicted or found guilty of a felony within a period of five years immediately preceding the date of application for the said license: And provided further, That, in the case of any new license or the transfer of any license to a new location, the board may, in its discretion, grant or refuse such new license or transfer if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school or public playground, or if such new license or transfer is applied for a place which is within two hundred feet of any other premises which is licensed by the board: And provided further, That the board shall refuse any application for a new license or the transfer of any license to a new location if, in the board's opinion, such new license or transfer would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed. *The board shall refuse any application for a new license or the transfer of any license to a location where the sale of liquid fuels or oil is conducted.*

47 P.S. §4-431(b) (emphasis added).

[10] Section 432(d) states in pertinent part:

**(Footnote continued on next page…)**

**(continued…)**

The board shall, in its discretion, grant or refuse any new license, the transfer of any license to a new location or the extension of an existing license to cover an additional area if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground, or if such new license, transfer or extension is applied for a place which is within two hundred feet of any other premises which is licensed by the board. The board shall refuse any application for a new license, the transfer of any license to a new location or the extension of an existing license to cover an additional area if, in the board's opinion, such new license, transfer or extension would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place to be licensed. . . . *The board shall refuse any application for a new license, the transfer of any license to a location where the sale of liquid fuels or oil is conducted or the extension of an existing license to cover an additional area*: And provided further, That the board shall have the discretion to refuse a license to any person or to any corporation, partnership or association if such person, or any officer or director of such corporation, or any member or partner of such partnership or association shall have been convicted or found guilty of a felony within a period of five years immediately preceding the date of application for the said license. The board may, in its discretion, refuse an application for an economic development license under section 461(b.1) or an application for an intermunicipal transfer or a license if the board receives a protest from the governing body of the receiving municipality. The receiving municipality of an intermunicipal transfer or an economic development license under section 461(b.1) may file a protest against the approval for issuance of a license for economic development or an intermunicipal transfer of a license into its municipality, and such municipality shall have standing in a hearing to present testimony in support of or against the issuance or transfer of a license. Upon any opening in any quota, an application for a new license shall only be filed with the board for a period of six months following said opening.

47 P.S. §4-432(d) (emphasis added).

the Code provides that: "No license shall be transferred to any place or property upon which is located as a business the sale of liquid fuels and oil." 47 P.S. §4-468(a)(3).[11]

Specifically, Petitioners contend that the terms "place" and "property" found in section 468(a)(3) are clear and unambiguous and are not synonymous with this Court's interpretation of "location" in *Water Street Beverage*, and, as undefined terms in the Code, "place" and "property" should be interpreted according to their "common and approved usage."[12] Section 1903(a) of the Statutory Construction Act

---

[11] Section 468(a)(3) provides:

> *No license shall be transferred to any place or property upon which is located as a business the sale of liquid fuels and oil*. Except in cases of emergency such as death, serious illness, or circumstances beyond the control of the licensee, as the board may determine such circumstances to justify its action, transfers of licenses may be made only at times fixed by the board. In the case of the death of a licensee, the board may transfer the license to the surviving spouse or personal representative or to a person designated by him. From any refusal to grant a transfer or upon the grant of any transfer, the party aggrieved shall have the right of appeal to the proper court in the manner hereinbefore provided.

47 P.S. §4-468(a)(3) (emphasis added).

[12] Petitioners present the following Black's Law Dictionary definitions of "place" and "property," as cited by the hearing examiner in his recommended opinion. The definition presented for "place" is as follows:

> This word is a very indefinite term. It is applied to any *locality*, limited by boundaries, however large or however small. It may be used to designate a country, state, county, town, or a very small portion of a town. The extent of the *locality* designated by it must generally be determined by the connection in which it is used. In its primary and most general sense [it] means *locality*, situations, or size[.]

(R.R. at 575a) (emphasis added). The hearing examiner and Petitioners have defined "property" as:
**(Footnote continued on next page…)**

of 1972, 1 Pa.C.S. §1903(a) ("[W]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.").

In the alternative, Petitioners assert that, if the terms "place" and "property" are ambiguous, the Code must be interpreted to restrain the sale of alcohol and that the Board's interpretation failed to do so. 47 P.S. §1-104(c) ("Except as otherwise expressly provided, the purpose of this act is to prohibit the manufacture of and transactions in liquor, alcohol and malt or brewed beverages which take place in this Commonwealth . . . .").

Here, we are bound by our Supreme Court's decision in *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 8 A.3d 885 (Pa. 2010) (*Wegmans*). The Supreme Court in *Wegmans* affirmed our orders that affirmed the Board's grant of Wegmans Food Markets, Inc.'s (Wegmans) applications for transfer of five liquor licenses to its pre-existing market cafés within five separate

---

**(continued…)**

> Land, and generally whatever is erected or growing upon or affixed to land. Also rights issuing out of, annexed to, and exercisable within or about land. A general term for lands, tenements, and hereditaments, property which, on the death of the owner intestate, passes to his heirs.

> Real or immovable property consists of: Land; that which is affixed to land; that which is incidental or appurtenant to land; that which is immovable by law[.]

(R.R. at 576a.)

13

grocery stores because of clearly defined parameters between the unlicensed grocery stores and the proposed licensed cafés.

In *Water Street Beverage*, this Court applied the reasoning of the Supreme Court in *Wegmans*. Weis Markets, Inc., (Weis) filed an application with the Board for the double transfer of a liquor license. Weis planned to sell malt beverages in the café at its grocery store. Weis also planned to install gas pumps approximately 340 feet from the grocery store and café that would be separated by parking spaces, trees, and islands of shrubbery. Water Street Beverage, LTD., t/a Keller's Beer (Water Street) filed a petition for intervention, objecting to Weis' application.

After a hearing, the hearing examiner recommended that the Board grant Weis' application. The Board granted the application, concluding that Weis would not be selling liquid fuels at the same location as the licensed premises in accordance with section 432(d) of the Code. The Board noted that the Code does not define the term "location" and considered the "common and approved usage" pursuant to section 1903 of the Statutory Construction Act. The Board found that Weis would sell liquid fuels at a location approximately 378 feet from the proposed licensed premises, have numerous barriers in between, have an employee solely for the sale of liquid fuels that has no responsibilities on the proposed licensed premises, and that the liquid fuels would be purchased at the gas kiosk or the gas pumps. Accordingly, the Board found that, "under a reasonable and practical interpretation of the term 'location,' the record indicates that Weis has taken appropriate measures to show that its liquid fuels would be sold at a different location from the proposed licensed premises." *Water Street Beverage*, 84 A.3d at 791.

On further appeal to this Court, Water Street argued that the Board erred in approving Weis' application because the sale of liquid fuels and alcohol would

14

occur at the same location in violation of sections 432(d) and 468(a)(3) of the Code. We first determined that Water Street waived any argument pertaining to section 468(a)(3), because no objection regarding that section had been made in the proceedings below. We stated that the Board properly resorted to the rules of statutory construction in interpreting "location," because "location" was an undefined term in the Code. This Court rejected Water Street's interpretation of the term "location" to mean a "single tract of land." We stated that such an interpretation would lead to absurd results, because "an applicant could operate a licensed premises only steps away from the gas pumps so long as the pumps and licensed premises are on separate deeds." *Water Street Beverage*, 84 A.3d at 794.

We noted that, pursuant to *Richard E. Craft*, the Board's interpretation of the Code and its regulations should be afforded deference unless it is clearly erroneous. We concluded that the Board's interpretation of the term "location" was consistent with the Code and its regulations. Relying on the Supreme Court's decision in *Wegmans*, we held that, after reviewing the Code and the Board's regulations, "a license is granted to a specific 'location,' i.e., premises, with clearly defined parameters, especially, as in this case, when a licensed premises is interiorly connected to an unlicensed premises/business." *Water Street Beverage*, 84 A.3d at 796. Specifically, we stated:

> Here, the Board has interpreted, and our Court affirms that the term "location" is defined in relation to the particular area of a licensed premises. Sections 432 and 436 of the Code, as well as sections 3.22, 3.53-3.56, 7.8-7.9, and 7.21 of the Board's regulations, consistently refer to the specific "premises," "place," or "portion" to be licensed. Although section 432(d) of the Code does not define "location," the Board's interpretation of this term is reasonable and supported by the aforementioned sections of the Code and existing regulations, as well as established case law. Based

15

> on all of the above, and in light of the deference to be afforded to the Board's interpretation of the Code and its regulations, the Board did not err in approving Weis' transfer application.

*Id.* at 796-97.

In *Wegmans*, Wegmans filed transfer applications for five restaurant liquor licenses to its Market Cafés in five separate grocery store locations. MBDA and some of its members intervened in the licensure proceedings, arguing that the interconnections between the proposed licensed premises and the attached grocery stores would violate the Board's regulations at 40 Pa. Code §§3.52–3.54,[13] and, thus, effectively allow supermarkets to sell beer. As a result of the objections, the Board

---

[13] Section 3.52 provides:

> (a) A licensee may not permit other persons to operate another business on the licensed premises.
>
> *       *       *
>
> (b) Licensed premises may not have an inside passage or communication to or with any business conducted by the licensee or other persons except as approved by the Board.
>
> (c) A licensee may not conduct another business on the licensed premises without Board approval.

40 Pa. Code §3.52.

Section 3.53 states that "[w]here the Board approved the operation of another business which has an inside passage or communication to or with the licensed premises, storage and sales of liquor and malt or brewed beverages shall be confined strictly to the premises covered by the license." 40 Pa. Code §3.53. Section 3.54 provides that "[w]here the Board has approved the operation of another business which has an inside passage or communication to or with the licensed premises, the extent of the licensed area shall be clearly indicated by a permanent partition at least 4 feet in height." 40 Pa. Code §3.54.

held five separate hearings regarding each liquor license transfer, but viewed all of the evidence presented as constituting one record applicable to each license application. The hearing examiner recommended that the Board approve each liquor license transfer.

Subsequently, the Board approved Wegmans' restaurant liquor license transfer applications. The Board stated that its approval of interior connections between restaurants and unlicensed premises is entirely discretionary and that it historically permitted such interior connections. The Board found that the requirements of the Board's regulations at 40 Pa. Code §§3.53–3.54 had been met because the perimeter of the proposed licensed premises was clearly marked with four-foot walls and the beer storage and sales were confined to the cafés. The Board concluded that Wegmans also met the requirements of the Board's regulation at 40 Pa. Code §3.52(c), because, in exercising its discretion, the Board found that the public welfare, health, peace, and morals would not be compromised by the preparation and storage of food items on the licensed premises that would be sold in the grocery store. The Board specifically found that Wegmans built its cafés in order to provide its customers with easy access to food options and not as a "veiled attempt to have the opportunity to sell takeout beer." *Wegmans*, 8 A.3d at 891 (citation and quotations omitted). MBDA appealed to this Court.

We first noted that neither party disputed whether Wegmans met the definition of a "restaurant" under section 102 of the Code, 47 P.S. §1-102.[14] We

---

[14] Section 102 provides as follows:

> **"Restaurant"** shall mean a reputable place operated by responsible persons of good reputation and habitually and principally used for the purpose of providing food for the public, the place to have an area within a building of not less than four hundred square feet, equipped

**(Footnote continued on next page…)**

17

concluded that merely because Wegmans' cafés resided within the grocery stores did not disqualify them from receiving a restaurant liquor license. This Court further concluded that the requirements of the Board's regulations at 40 Pa. Code §§3.52–3.54 had been met by Wegmans "demarcating the proposed restaurant by four-foot walls and restricting beer storage and sales exclusively to that area." *Wegmans*, 8 A.3d at 891. Accordingly, we affirmed the approval of Wegmans' applications.

On further appeal, our Supreme Court also concluded that the Board did not abuse its discretion in approving the interior connections between the proposed licensed premises and the grocery stores under the Board's regulation at 40 Pa. Code §3.52, because "the [cafés] predate the applications for liquor license, are vastly larger and more sophisticated than the minimum statutory requirements for restaurants, and easily satisfy every other applicable statutory and regulatory criterion[.]" *Id.* at 894. The court further determined that the Board's regulations at 40 Pa. Code §§3.53–3.54 were satisfied, because the record supports the Board's findings that Wegmans "has made a physical distinction between the proposed licensed area and the rest of the store by way of a four-foot dividing wall with interior and exterior passageways," and "beer is being stored and sold exclusively on the licensed premises." *Wegmans*, 8 A.3d at 894.

---

**(continued…)**

> with tables and chairs, including bar seats, accommodating at least thirty persons at one time. The board shall, by regulation, set forth what constitutes tables and chairs sufficient to accommodate thirty persons at one time.

*Id.*

18

The court concluded that "[r]efusing to acknowledge the validity of these restaurants would violate, rather than vindicate, legislative intent. The legislature has stated clearly that restaurants are entitled to obtain liquor licenses if they satisfy criteria, and those criteria are met here." *Id.* at 896. Accordingly, the Supreme Court affirmed this Court's orders affirming the Board's approvals of Wegmans' applications for transfer of the restaurant liquor licenses.

The Supreme Court in *Wegmans* clearly set the standard that, as long as the requirements set forth in the Code and the Board's regulations for plainly defined parameters between a licensed and an unlicensed premises are satisfied, the Board does not abuse its discretion in granting a liquor license to a proposed licensed premises that has clear physical demarcations from the interconnected unlicensed premises.

In this case, Applicant has met the requirements to have physical demarcations between the convenience store/fuel station and the proposed licensed restaurant. There are eighty feet in between the proposed licensed restaurant and the liquid fuel pumps, which are separated by a speed bump, a tapered curb, a sidewalk, a front concrete area, a patio area, a steel fence, and a parking lot. The proposed licensed restaurant and the unlicensed convenience store are separated by an eight-foot-high wall with only a four-foot-wide pass-through connecting the two entities. Further, all liquid fuel sales occur on the unlicensed premises. Applicant is also prepared to increase staff and have signs indicating the separate entities of the restaurant and the convenience store so that merchandise will not be intermingled. Accordingly, Applicant has met the standard announced by the Supreme Court in *Wegmans* to have clearly defined parameters in between the proposed licensed and

unlicensed premises, and, thus, the Board did not err or abuse its discretion in granting Applicant's application for License transfer.

Petitioners attempt to parse the Code's language in an effort to differentiate between our interpretation of the term "location" in section 432(d) of the Code in *Water Street Beverage*, based on our Supreme Court's opinion in *Wegmans*, and the terms "place" and "property" in section 468 of the Code. However, Petitioners concede that this Court's interpretation of "location" in *Water Street Beverage* is binding on this case. Giving deference to the Board, *Richard E. Craft*, the Board's interpretation of "place" and "property" is consistent with the Code and the Board's regulations. As we stated in *Water Street Beverage*, the Code and the Board's regulations "consistently refer to the specific 'premises,' 'place,' or 'portion' to be licensed." 84 A.3d at 797. The terms "location," "place," and "premises" are also used interchangeably in sections 404, 431(b), 432(d), and 468(a)(1)–(3) of the Code. Such use reflects the Legislature's intent that the terms "location," "place," "premises," and "property" should be similarly construed.

The Legislature's use of each of these words in the noted sections reflects an overall intent to control the "licensed premises." As the Board correctly asserts, absurd results would follow if "place," "property," and "location" are interpreted differently. Notably, a new liquor license could be granted under section 432 but may not be transferred under section 468(a)(3) if a stricter analysis is applied when dealing with a "place" or "property" where liquid fuels and alcohol are sold.

**Conclusion**

As it must under *Wegmans*, Applicant has constructed clearly defined parameters in between the proposed licensed premises and the unlicensed premises.

20

The Board concluded that the prohibitions in the Liquor Code against licensing locations, places, or properties that sell liquid fuels apply to the actual licensed premises. We discern no error or abuse of discretion in the Board's interpretation of the terms "place" and "property" in section 468 of the Code to have the same meaning as the term "location" in section 404 of the Code.

      Accordingly, we affirm.


_____
PATRICIA A. McCULLOUGH, Judge



Judge Brobson did not participate in this decision.

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Malt Beverage Distributors : 
Association, Gabler's Beverage : 
Distributor, Inc. and PKD, Inc., : 
           Petitioners : 
            : No. 1352 C.D. 2014
           v. : 
            : 
Pennsylvania Liquor Control Board, : 
           Respondent : 

## ***ORDER***

AND NOW, this 31st day of July, 2015, the July 17, 2014 order of the Pennsylvania Liquor Control Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge