# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Houghton Enterprises, Inc., :
                           Petitioner :
                                      :
          v.                          :   No. 930 C.D. 2021
                                      :   Argued: September 14, 2022
Commonwealth of Pennsylvania,         :
Department of State,                  :
                           Respondent :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                    FILED: April 21, 2023

   Houghton Enterprises, Inc. (Houghton) petitions for review from the final adjudication and order of the Secretary of the Commonwealth, of the Department of State (Department), filed August 17, 2021, which affirmed a cease-and-desist order (C&D) issued by its Bureau of Corporations and Charitable Organizations (Bureau), precluding Houghton from conducting the services of a professional solicitor in Pennsylvania as defined by the Solicitation of Funds for Charitable Purposes Act (Act).[1]  Upon review, there is substantial evidence of record establishing that Houghton is in the business of soliciting donations on behalf of charitable organizations.  Therefore, we affirm.

---

[1] Act of December 19, 1990, P.L. 1200, *as amended*, 10 P.S. §§ 162.1-162.24.

# I. BACKGROUND[2]

Houghton is a family-owned, for-profit corporation based in Cochranville, Pennsylvania. The corporation runs a portable amusement park and provides rides, games, and food for carnivals at locations in Pennsylvania, Maryland, and Delaware. The majority of Houghton's clients are nonprofit organizations. Houghton receives 70% of the ride ticket revenue, as well as profits from the concession and game stands. Houghton's website advertised testimonials from its clients regarding its fundraising success and noted that the carnival booking did not cost anything but, rather, the company "donate[s] a percentage of [its] gross sales to your organization or event" to help raise money. Notes of Testimony (N.T.), 1/26/21, at 25-29, Ex. C-7.

The Bureau opened an investigation into Houghton's operations and finances based on its review of Houghton's contract with the Malvern Fire Company (Fire Company), in which Houghton received a percentage fee from the carnival event. The investigation was to determine if Houghton was operating in violation of the Act, which requires professional solicitors to register with the Bureau.[3]

On April 10, 2019, the Bureau sent Houghton a demand letter by certified mail requesting three years' worth of information concerning professional fundraising counsel or professional solicitor services, including contracts with charitable organizations. The demand letter noted that the failure to provide such information could result in the issuance of a C&D. The Department averred that

---

[2] Unless stated otherwise, we derive this background from the final adjudication of the Secretary, which is supported by the record. *See* Final Adjudication, 8/17/21, at 1-8.

[3] Professional solicitors are for-profit companies or individuals retained by charitable organizations to request and raise funds from Pennsylvania citizens for charitable purposes and which receive compensation related to the amount of contributions received. *See* Section 3 of the Act, 10 P.S § 162.3.

Houghton received the letter, although Houghton did not provide any of the requested information or register with the Department.

On June 27, 2019, the Department issued an order directing Houghton to cease and desist from soliciting contributions or conducting any services as a professional solicitor in the Commonwealth until Houghton (1) provided the Bureau with the previously requested information and (2) registered with the Bureau or established its exemption from registration under the Act.

Houghton timely appealed the issuance of the C&D and appeared before a Bureau hearing examiner. The Department and Houghton presented testimonial and documentary evidence. The Department presented evidence that a C&D had been issued against Houghton on the basis that it was a nonregistered professional solicitor. Further, Houghton had not complied with any of the remedies provided that would allow the Department to lift the C&D. Houghton averred that it was not required to register under the Act and that the C&D should not have been issued. The parties, along with amicus Pennsylvania State Showman's Association, Inc. (Amicus), filed post-hearing briefs.[4]

The Secretary denied Houghton's appeal, concluding that the C&D was properly entered because Houghton had failed to respond to the Bureau's information request and had not duly registered under the Act. Further, the Secretary concluded that Houghton was indeed a professional solicitor. Houghton timely filed a petition for review with this Court. Contemporaneously, Houghton filed applications for supersedeas with the Department and this Court, which were both

---

[4] Additionally, in this Court, Amicus has filed an amicus brief. Amicus is an amusement industry trade association with headquarters in Lehighton, Pennsylvania, and has a large membership base (approximately 500) located in Pennsylvania. Amicus filed its brief in support of Houghton's position.

3

denied. *Houghton Enters., Inc. v. Dep't of State, Pa. Cmwlth.,* (Pa. Cmwlth., No. 930 C.D. 2021, filed Oct. 13, 2021) (denying on the basis that Houghton failed to establish the factors outlined in *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 467 A.2d 805, 808-09 (Pa. 1983)).

## II. ISSUES

On appeal, Houghton raises four issues for our review. First, Houghton contends that the Department erred in upholding the C&D after Houghton provided sufficient evidence that it is not a "professional solicitor" pursuant to the Act. Houghton's Br. at 16.

Second, Houghton contends that the Department erred as a matter of law in concluding that Houghton is a "professional solicitor" contrary to the definition of the statute and pursuant to the evidence. *See id.* at 20.

Third, Houghton contends that the Department erred in failing to consider the evidence of record and/or concluding that Houghton is not a "commercial coventurer." *See id.* at 25.

Finally, Houghton contends that the Department erred as a matter of law by failing to consider it compelling that the burdens that go along with registering and operating as a professional solicitor are unduly burdensome and impractical and will eviscerate the amusement industry. *See id.* at 28-32.

## III. ANALYSIS

The Act requires the registration of charitable organizations, professional fundraisers, and professional solicitors, and provides the Department with the means to impose civil and criminal penalties for violations of the Act. *See* Section 2 of the Act, 10 P.S. § 162.2. In passing the Act, the General Assembly

4

intended to protect and inform the citizens of this Commonwealth with relevant information concerning the solicitation of contributions for charitable purposes.

This Court's scope of review in resolving questions related to the Act is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Rehab. Ctr. & Workshop, Inc. v. Commc'n on Charitable Orgs.*, 405 A.2d 980, 983 (Pa. Cmwlth. 1979); 2 Pa. C.S. §704. Substantial evidence is defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Younkin v. Bureau of Pro. & Occupational Affairs, State Real Estate Comm'n*, 774 A.2d 1281 (Pa. Cmwlth. 2001). For questions of law and statutory construction, our review is plenary. *Malt Beverages Distribs. Assoc. v. Pa. Liquor Control Bd.*, 8 A.3d 885, 892 (Pa. 2010).

In matters where violations of the Act are at issue, the Secretary of State may initiate the appropriate proceedings to enforce this act, and the Secretary may decide matters relating to the issuance, renewal, suspension or revocation of registrations at issue, and may conduct hearings and make adjudications accordingly. *See* Section 4 of the Act, 10 P.S. § 162.4. Accordingly, the Secretary acts as factfinder in such matters, and as such is "the ultimate judge of credibility and resolves all conflicts in the evidence." *See Lodge v. Robinson Twp. Zoning Hr'g. Bd.*, 283 A.3d 910, 925 (Pa. Cmwlth. 2022).

**A. Whether the C&D was Supported by Substantial Evidence**

Houghton contends that the Department erred in upholding the C&D after Houghton provided sufficient evidence that it is not a "professional solicitor" pursuant to the Act. Houghton's Br. at 16. First, Houghton argues that it never received the demand letter but nevertheless provided enough evidence at the hearing

5

that any failure to produce requested documents was remedied. *See id.* at 16. Second, Houghton contends that the evidence did not support the Department's decision to uphold the C&D. *See id.* at 19. Houghton points to the testimony of its president that it is a for-profit company and that its compensation for providing services is a percentage of the ticket revenue and profits from concession stands, less a flat fee per stand. *See id.* Houghton avers that there is nothing in its contracts requiring it to request contributions from anyone attending the event, and no representations are made to attendees that a portion of the proceeds go to a charitable organization. *See id.* Accordingly, Houghton argues that the C&D should not have been issued or upheld. *See id.* at 19.

The Department responds that Houghton did not provide any documents or information in response to the demand letter and that, accordingly, the C&D was properly entered. *See* Dep't's Br. at 9-10. Additionally, the Department avers that the evidence provided by Houghton at the hearing was largely irrelevant and self-serving. *See id.* at 10. The Department contends that once it proved that the C&D was supported by the Act and should be sustained, Houghton failed to provide information sufficient for the Department to determine that it was exempt from the Act. *See id.*

### 1. Houghton's Receipt of Notice and Initial Issuance

Houghton first argues that it did not receive notice of the demand letter and that the C&D was entered in error. *See* Houghton's Br. at 16. The Act prohibits persons operating in violation of the requirements of the Act, regardless of intent or injury. Section 15 of the Act, 10 P.S. § 162.15. The Commonwealth may conduct investigations into the activities of potential professional solicitors. *See* Section 16 of the Act, 10 P.S. § 162.16. Specifically, the Secretary may "[r]equire or permit

6

any person to file a statement in writing, under oath or otherwise, as to all the facts and circumstances concerning the matter to be investigated;" "[r]equire the attendance and testimony of witnesses and the production of any books, accounts, papers, records, documents, audits and files relating to any solicitation or any practice subject to this act or the regulations of the department;" and "[e]xamine witnesses and receive evidence during any investigation or public or private hearings." Section 16(a) of the Act, 10 P.S. § 162.16(a).

When a person or organization does not comply with an investigation, the Secretary may refuse to register, revoke, or suspend the registration of any professional solicitor when he finds that the professional solicitor is operating in violation of the provisions of the Act, the regulations of the Department, or an order issued by the Secretary; or has failed, after notice, to produce requested records or disclose any information required to be disclosed by the Act. *See* Section 17(a) of the Act, 10 P.S. § 162.17(a). When the Secretary makes such a finding, the Secretary may issue an order directing that the person cease and desist specified fundraising activities, as well as impose administrative fines for each act or omission constituting the violation of the Act and additional penalties for each day during which the violation continues. *See* Section 17(b) of the Act, 10 P.S. § 162.17(b).

The record reflects that the Department sent its demand letter by certified mail. *See* N.T. at 31; Ex. C-4. After sending the letter, Drew Koser, the Department's investigator, was contacted by Houghton's accountant and by someone from the company named Gladys Houghton. *See id.* at 32. Koser informed the accountant that the Department had determined that Houghton was a professional solicitor based upon its website. *See id.* Koser sent copies of the Act and the registration form to Gladys Houghton. *See id.* at 33. He received no response from

Houghton or any employee thereof. *See id.* at 34-35. Houghton's president, on the other hand, testified that he never received the demand letter because the company was on the road in April. *See id.* at 75.

The burden of proof rests on the Commonwealth to prove that the issuance of the C&D was supported by the Act and should be sustained. *See*, *e.g.*, *Samuel J. Lansberry, Inc. v. Pa. Pub. Util. Comm'n*, 578 A.2d 600, 601-02 (Pa. Cmwlth. 1990). Here, the evidence showed that the Commonwealth sent the appropriate notice, and the Secretary credited the testimony of the Commonwealth and did not credit the testimony of Mr. Houghton, noting that Houghton was served with "all notices, pleadings and orders filed of record in this matter" and had an opportunity to be heard. *See* Final Adjudication, 8/17/21, at 9. The language of the Act provides that, in cases where a person or organization does not comply with the investigation, the Secretary has the power to issue a C&D. *See* Section 17 of the Act, 10 P.S. § 162.17. This is exactly what the Commonwealth and the Secretary did in this matter, and there is no error in the initial issuance. *See Younkin*, 774 A.2d at 1286-87; *see also* Section 4 of the Act, 10 P.S. § 162.4 (Secretary is empowered to hold hearings and make adjudications).

### 2. C&D Supported by Substantial Evidence

Houghton also argues that the Secretary erred in upholding the C&D because the record lacks substantial evidence that Houghton is a professional solicitor. *See* Houghton's Br. at 16. Houghton's arguments center around the fact that there is nothing in its contracts requiring Houghton to request contributions from people attending its events and there are no representations made to attendees that the proceeds go to a charitable organization. *See id.* at 19.

8

A professional solicitor is any organization retained for financial or other considerations by a charitable organization to solicit for contributions for charitable purposes. *See* Section 3 of the Act, 10 P.S. § 162.3.[5] A solicitation is a direct or indirect request for a contribution on the representation that such a contribution will be used in whole or in part for a charitable purpose. *See id.* Contributions may be indirect, in the form of payment for goods, services, or admission to fundraising events, and an indication of a professional solicitor is whether the compensation is related to the amount of contributions received. *See id.* The Act specifically defines the sale of tickets, services, and announcements requesting the public attend a carnival as acts of solicitation. *See id.*

---

[5] The full definition of a "professional solicitor" is

> [a]ny person who is retained for financial or other consideration by a charitable organization to solicit in this Commonwealth contributions for charitable purposes directly or in the form of payment for goods, services or admission to fundraising events, whether such solicitation is performed personally or through his agents, servants or employees or through agents, servants or employees especially employed by or for a charitable organization who are engaged in the solicitation of contributions, the sale of goods or services or the production of fundraising events under the direction of such person, or a person who plans, conducts, manages, carries on, advises, consults, whether directly or indirectly, in connection with the solicitation of contributions, sale of goods or services or the production of fundraising events for or on behalf of any charitable organization, but does not qualify as a professional fundraising counsel within the meaning of this act. A person who is otherwise a professional fundraising counsel shall be deemed a professional solicitor if his compensation is related to the amount of contributions received. A bona fide salaried officer or regular, nontemporary employee of a charitable organization shall not be deemed to be a professional solicitor provided that the individual is not employed or engaged as professional fundraising counsel or as a professional solicitor by any other person.

10 P.S. § 162.3.

Instantly, the evidence presented by the Commonwealth at the hearing established that Houghton contracts with nonprofit organizations to provide rides, food concession stands, and games, during a carnival-type event held by the charitable organization. N.T. at 80-81. Houghton contracted with the Fire Company to provide fundraising carnivals each year from 2016 through 2019. N.T. at 20; Commonwealth's Ex. 10. Houghton receives 70% of the ride and ticket revenue, 100% of the profits from the concession stands and games, minus a flat fee for the booths. N.T. at 84-85. Houghton's website advertised that its carnivals could benefit "local hospitals, churches, fire companies, and other non-profit organizations," and that it could "help [them] raise the needed funds for [their] organization[s]." N.T. at 28; Commonwealth's Ex. 9. Houghton later removed this language from its website but continues to advertise carnivals using the names of the charitable organizations. N.T. at 74-78, Houghton's Ex. B. Although Houghton's president testified that Houghton also contracts with for-profit corporations, he did not provide evidence to support his claims. N.T at 84-85.

We reject Houghton's argument that it is not a professional solicitor solely because the contracts do not explicitly require it to solicit. The Act itself provides that requests for contributions to charitable organizations may be in the form of admission to fundraising events and that the sale of tickets and services, and announcements requesting that the public attend a carnival constitute acts of solicitation. *See* Section 3 of the Act, 10 P.S. § 162.3. The Act delineates between professional fundraising counsel and professional solicitors, noting that professional solicitors take percentages of the profit as payment. *See id.* The evidence introduced by the Commonwealth established that Houghton advertised its services for the benefit of non-profit organizations to raise necessary funds and took a percentage of

10

the profits as payment. Houghton did not provide any evidence to the contrary beyond Mr. Houghton's own testimony, which the Secretary rejected. Accordingly, there is substantial evidence to support the Secretary's decision, and the Secretary did not err in finding that there was substantial evidence to support upholding the C&D. *Younkin*, 774 A.2d at 1286-87.

### B. Houghton's Status as a Professional Solicitor

Houghton argues that its contracts do not contain any provisions indicating that it was retained to solicit contributions. *See* Houghton's Br. at 23-24. Further, although Houghton does not contend that the statute is ambiguous, it avers that a finding that "a professional solicitor is any person who plans, conducts, manages, or carries on . . . in connection with the sale of goods or services" would be an absurd result. *See id.* at 24. Therefore, Houghton contends that it cannot be a professional solicitor. *See id.*

The Department notes that the statute is not ambiguous. *See* Dep't's Br. at 17. The Department argues that Houghton is a professional solicitor and points to several facts in the record to support this. First, Houghton is the one requesting and collecting funds from the public and being compensated by a portion of the proceeds of the solicitation. *See id.* at 12, 15-16. Second, the Department notes that the vast majority of Houghton's clients are non-profit organizations. *See id.* at 13. The Department argues that solicitation is not always a direct or overt ask, and Houghton's advertisement of the events linking to particular charities on its websites falls within the definition of solicitation. *See id.* at 14-15.

Instantly, we note that "when engaging in statutory construction, a court's duty is to give effect to the legislature's intent and to give effect to all of a statute's provisions." *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d

11

665, 674 (Pa. 2020) (citing 1 Pa. C.S. § 1921(a)). The best indication of legislative intent is "the plain language of the statute." *See id.* (citation omitted). When determining the plain meaning of the statute, we "consider the statutory language in context and give words and phrases their 'common and approved usage.'" *See id.* Where the language is clear and unambiguous, we must "give effect to the words of the statute and not disregard the text to implement its objective." *See id.* (citing 1 Pa. C.S. § 1921(b)).

"Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent." *Id.*; *see, e.g.*, 1 Pa. C.S. § 1921(c) (enumerating further considerations). For example, we may presume that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable. *Commonwealth v. Coleman*, 285 A.3d 599, 605 (Pa. 2022); 1 Pa. C.S. § 1922(1). A statute is ambiguous if there are two or more reasonable interpretations of the statutory language. *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Givner)*, 39 A.3d 287, 294 (Pa. 2012).

Houghton does not argue that the statute is ambiguous but nevertheless asserts that finding it is a professional solicitor would be an absurd result that the General Assembly could not have intended. However, if the statute is not ambiguous, we need not delve into the intent of the legislature or consider whether the results would be "absurd." Here, the statute is not ambiguous and accordingly, this analysis does not delve into the intent of the legislature.[6] *See Crown Castle*, 234 A.3d at 674; *see, e.g.*, 1 Pa. C.S. § 1921(b). Further, as discussed above in relation

---

[6] Again, we note that the General Assembly's legislative intent is enshrined in the statute and that the Act was specifically intended to "protect the citizens of the Commonwealth" from "fraud, deception, and misrepresentation perpetrated in the name of charity." Section 2 of the Act, 10 P.S. § 162.2.

to Houghton's first issue, substantial evidence supported the issuance and upholding of the C&D. *Younkin*, 774 A.2d at 1286-87.

## C. Houghton's Status as a Commercial Coventurer

Houghton contends that the Department erred in failing to consider the evidence of record when it concluded that Houghton is not a "commercial coventurer." *See* Houghton's Br. at 25. Houghton argues that the evidence showed that it is a for-profit company primarily engaged in trade or commerce other than for the raising of funds. *See id.* Houghton avers that although its trade may benefit charitable organizations, it is not a fundraising company and that its primary purpose is its own profit. *See id.* at 26-27. Thus, Houghton concludes that the difference between commercial coventurers and professional solicitors is the primary intent of the business. *See id.* at 26. Accordingly, Houghton argues that it is entitled to operate for the benefit of charitable organizations without rising to the level of a professional solicitor subject to the "burdensome oversight" of the Department. *See id.* at 27-28.

The Department responds that Houghton cannot be a commercial coventurer as defined by the Act. *See* Dep't's Br. at 18-19. According to the Department, Houghton's entire business model is based upon contracting with charitable organizations or other non-profit organizations, and the record is devoid of an example of similar contracts with a for-profit business. *See id.* at 20. Accordingly, the Department contends that Houghton cannot be a commercial coventurer. *See id.*

The Act defines a commercial coventurer as any person "who for profit is regularly and primarily engaged in trade or commerce other than in connection with the raising of funds [for charitable organizations]" or "any other thing of value

when offered at the usual retail price comparable to similar goods or services" and "who advertises that the purchase or use of goods, services, entertainment or any other thing of value will benefit a charitable organization." *See* Section 3 of the Act, 10 P.S. § 162.3. Commercial coventurers may also advertise that "the purchase or use of goods or services or attendance at events or performances offered or sponsored by the commercial coventurer will benefit, in whole or in part, a charitable organization[.]" *See id.* Commercial coventurers are not subject to the Act's registration requirements for professional solicitors. *See* Section 9 of the Act, 10 P.S. § 162.9. However, charitable organizations utilizing the services of commercial coventurers must disclose the names and addresses of the coventurers acting on their behalf on the registration statements. *See* Section 5(b)(10) of the Act, 10 P.S. § 162.5(b)(10).

Here, the operable language in the definition of a commercial coventurer is "any person who for profit is regularly and primarily engaged in trade or commerce *other than* in connection with the raising of funds." Section 3 of the Act, 10 P.S. § 162.3 (emphasis added). Instantly, Houghton argues that it is engaged in a trade or commerce other than raising funds for charities. However, Houghton did not introduce any evidence of contracts with for-profit companies at the hearing, and Houghton's website advertises that its business benefits charitable organizations. Although Houghton's business is itself a for-profit business, the evidence introduced at the hearing showed that Houghton solely facilitated fund-raising carnivals for non-profit and charitable organizations. The Secretary correctly observed that "all the upcoming events listed on [Houghton's] website appeared to involve charitable organizations . . . contracting with charitable organizations and other non-profit organizations is integral to [Houghton's] very business model."

14

Final Adjudication, 8/17/21, at 18. Based on the evidence introduced at the hearing, the Secretary did not err in determining that Houghton was not a commercial coventurer. *Younkin*, 774 A.2d at 1286-87.

### D. Implications for the Amusement Industry

Finally, Houghton contends that the Department erred as a matter of law by failing to consider it compelling that the burdens that go along with registering and operating as a professional solicitor are unduly burdensome and impractical. *See* Houghton's Br. at 28. Houghton argues that subjecting it and all other portable amusement operators to the Act's requirements would result in an absurd application of the Act and would effectively kill the amusement industry. *See id.* at 28-29. Houghton argues, without averring ambiguity, that the record maintenance requirements of the Act would produce absurd results when applied to portable amusement park operators by increasing overhead costs and hampering it with record-keeping obligations. *See id.* at 30-32.

The Department responds that the statute is not ambiguous. *See* Dep't's Br. at 34. Further, it is only Houghton that is the subject of this action, and the Department is not aware how other portable amusement parks operate. *See id.* at 21. The Department points out that the legislative intent in the Act factors the public interest, requiring accountability for both charitable organizations and for-profit companies soliciting on behalf of those charities. *See id.* at 22. For example, the Department notes that carnival-goers are likely unaware that 70% of the ride-ticket sales and almost 100% of the money spent on food and games goes to Houghton rather than the Fire Company. *See id.* at 22-23. There is no financial accountability for day-of-event ticket sales or concessions paid for by cash. *See id.* at 23.

As discussed above, because the statute is not ambiguous and because Houghton does not allege ambiguity, we do not consider other factors of statutory interpretation such as the intent of the General Assembly or whether or not the statute would lead to an absurd result. *Crown Castle*, 234 A.3d at 674; *see also* 1 Pa. C.S. § 1921(b). Accordingly, Houghton's arguments regarding the effects of registration upon its business and potential impacts upon the amusement industry at large are not arguments we may consider on appeal. *See id.*

## IV. CONCLUSION

For the above reasons, we affirm the Secretary's final adjudication, determining that the C&D was properly issued and upheld; that Houghton is a professional solicitor; and that Houghton is not a commercial coventurer.

LORI A. DUMAS, Judge

Judge Wallace did not participate in the decision in this case.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Houghton Enterprises, Inc.,      :
                  Petitioner     :
                              :
       v.               :    No. 930 C.D. 2021
                              :
Commonwealth of Pennsylvania,  :
Department of State,          :
                  Respondent  :

## **O R D E R**

AND NOW, this 21st day of April, 2023, the final adjudication and order of the Secretary of State, entered August 17, 2021, is AFFIRMED.

_____
LORI A. DUMAS, Judge
